Anthony P. ABRAHAM, Anthony P. Abraham, Inc., Harry R. Layne, Lakefront North Properties, Inc.

v.

The CITY OF MANDEVILLE, Adelaide J. Boettner, James J. Gleason, III, Emile Navarre, Edward J. Price, III, W. "Patrick" Smith, Jr., Kenneth V. Sollberger, Lynn R. Mitchell, Mertis A. Fulton, Lawrence J. Justrabo, John Paul Landry, Nils W. Lindbloom, Edward S. Ryan and Charles E. Roth.

Civ. A. No. 84–1054.

United States District Court, E.D. Louisiana.

July 9, 1986.

Bruce Waltzer, New Orleans, La., for plaintiffs.

Rene Patorek, Gretna, La., Harry Rosenberg, New Orleans, La., William Decker, Mandeville, La., for defendants.

## ORDER AND REASONS

FELDMAN, District Judge.

Another Motion for Summary Judgment is presented to this Court, this time by the City of Mandeville; it raises new questions. Plaintiffs challenge the Motion and move for sanctions under Rule 11 of the Federal Rules.

This motion calls up the question of the proper scope of federal judicial review of municipal zoning decisions.

I

This dispute arises out of a zoning controversy which was triggered by plaintiffs' proposal to construct at varying times a condominium project and a hotel complex on property located on the north shore of Lake Pontchartrain in Mandeville, Louisiana.

The property, which is the site of the old Golden Shores clubhouse area, was zoned B–2 (Highway Business District) when plaintiffs' building permit applications were submitted to the City. Plaintiffs' first application dealt with a condominium project in October 1983. The record reflects that the building inspector denied that application because of a failure to comply with several specified building requirements.

On October 13, 1983, close to the submission of the condominium building application, the Mandeville City Council met and an ordinance was introduced to rezone the property to R–1 (Single Family Residence District).[1]

Plaintiffs tried to cure the defects in the original building permit application and again requested that a permit be issued for that project. The Chairman of the Planning and Zoning Commission recommended that the permit be denied because of questions as to whether multi-family housing was permitted on property zoned B–2 which was surrounded by single family residences.

Plaintiffs then changed their plans and submitted an application to construct a hotel complex on the property site. A temporary building inspector, who had been appointed by the Mayor but who had not yet been confirmed by a majority of the City Council as required by local law, approved plaintiffs' application to build the hotel complex along with several other permits which were pending in November 1983. On December 8, 1983, the City Council ratified the appointment of the acting building

---

1. The property in question was surrounded by single family residences. The minutes of the Planning and Zoning Commission reflect that there was significant local opposition to the development proposed by the plaintiffs.

inspector, but the Council revoked all of the permits issued by him because he had not been confirmed by the Council at the time the permits were issued. At the same December meeting, the Council also passed a resolution declaring a moratorium on the issuance of any building permits regarding the plaintiffs' property until a pending ordinance to rezone that property from B–2 to R–1 had been considered by the City Council.

On January 12, 1984 the proposed ordinance was reintroduced by the Council because of procedural problems with the introduction of the prior ordinance. On February 28, 1984 the Planning and Zoning Commission held a public hearing on the proposed zoning ordinance, and voted to recommend to the City Council that the zoning ordinance be passed and that plaintiffs' property be rezoned from B–2 to R–1; plaintiffs were present at that meeting. The minutes of the Planning and Zoning Commission reflect substantial community support for the zoning change; local residents and city officials expressed concern about preserving and maintaining the residential character of the area. Finally, on March 8, 1984, the City Council acted on the Planning and Zoning Commission's recommendation and unanimously voted in favor of the ordinance to rezone the property to R–1. That action killed plaintiffs' project. The uncontroverted affidavits submitted by officials of the Planning and Zoning Commission and the City Council reflect that the decision to rezone the property was based upon "the overwhelming support by the residents of the City of Mandeville for passage of the zoning ordinance, the general welfare of the community, the adverse impact that plaintiffs' proposed commercial development of the subject property would have on the residential character of the neighborhood surrounding the subject property, and the adverse impact of such commercial projects on the

density, sewerage, water and roadway systems of the surrounding neighborhood." [2]

Plaintiffs have not sought a zoning variance or any other relief provided by the Mandeville Zoning Code. Rather, they brought suit to this Court seeking damages under Section 1983 and seeking declaratory relief to have the March 8, 1984 ordinance stricken as a nullity on constitutional grounds.

The earlier motion for summary judgment was brought by the individual defendants and focused on the defenses of legislative immunity and prematurity. That motion was denied on October 31, 1985 and the denial was affirmed by the Fifth Circuit on May 27, 1986. Now, the City of Mandeville moves for summary judgment against plaintiffs' substantive and procedural due process claims, as well as their equal protection claims, on the basis of the Fifth Circuit's recent decision in *Shelton v. City of College Station*, 780 F.2d 475 (5th Cir. 1986) (rehearing en banc). The City urges that *Shelton* supports the entry of summary judgment in this case. The Court agrees.

## II

In *Shelton*, plaintiffs alleged substantive and procedural due process and equal protection violations as a result of a local zoning board's refusal to grant a zoning variance. A panel of the Fifth Circuit affirmed the grant of summary judgment on the procedural due process question, but reversed the grant of summary judgment on the substantive due process claim. *Shelton v. City of College Station*, 754 F.2d 1251 (5th Cir.1985). This Court's Order of October 31, 1985 was based, in part, on the panel decision in *Shelton*. Thereafter, the Fifth Circuit held an en banc rehearing and affirmed the District Court on the substantive due process claim as well, concluding that there was a rational

---

**2.** The correctness of these perceptions is unnecessary to this decision. It is uncontroverted that the plaintiffs and their representatives had due notice of all meetings, and attended and participated in both the meetings of the Commission and the City Council proceedings regarding the rezoning of their property.

basis for the decision of the local zoning board.

Writing for a majority of the Court, Judge Higginbotham instructs that "[i]n the absence of invidious discrimination, suspect classifying criteria, or infringement of fundamental interests", all of which are absent in this case, judicial review of municipal zoning decisions "is confined to whether the decisions were 'arbitrary and capricious'". Further, Judge Higginbotham tells us that "[t]his requirement of substantive due process under the Fourteenth Amendment ... is met if there was any conceivable rational basis for the zoning decision". *Shelton, supra* at 477, citing *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). The Court commented that "[f]ederal judicial interference with a state zoning board's quasi-legislative decisions ... is proper only if the governmental body could have had no legitimate reason for its decision". *Shelton, supra* at 483. "The key inquiry", the Court states, "is whether the question 'is at least debatable' ... If it is, there is no denial of substantive due process as a matter of federal constitutional law." *Id.* That is the test we must apply here.[3]

In granting summary judgment because the City had at least debatable grounds for making its zoning decisions, the en banc majority of the Fifth Circuit rejected the prior panel's insistence on trial-type proof of actual legislative purpose. *Shelton, supra* at 484–485. The Court held that such an approach was "at odds with constitutional review of a legislative act". *Id.* at 481. The Court summarized the appropriate manner of review of a municipal zoning decision on a motion for summary judgment as follows:

"Entailed in the [prior] panel's conclusion that there are in this case issues of fact for a jury, is the further conclusion that a jury might properly find that there was a rational basis for the zoning decisions. Under the legislative model, which asks whether the factual question was at least debatable, the district court's grant of defendant's motion for summary judgment was *a fortiori* proper. Detailing the record evidence is therefore an unnecessary exercise."

*Id.* at 484.

Applying *Shelton* to the zoning decisions in dispute in this case, the Court concludes that the City of Mandeville is entitled to summary judgment as a matter of law.[4]

### III

Plaintiffs point to no evidence to support their naked assertion that the building inspector's denial of a building permit regarding the condominium project constitutes arbitrary and capricious conduct on the part of the City and its officials. Uncontroverted deposition testimony establishes that the application was rejected for failure to comply with several local building requirements. Such a stated and unrebutted failure to comply with local building requirements certainly provides at the very least a "conceivable rational basis" for the decision. The recommendation of the Chairman of the Planning and Zoning Commission to deny plaintiffs' renewed request to construct the condominium project also seems to have been fairly based upon unresolved questions as to whether construction of the condominium project would conform to applicable zoning regulations. Concern over unresolved questions regarding interpretation of the local zoning ordinance is amply supported in the record, articulates a recognition of the general welfare of the community, and provides a rational basis for the recommen-

---

3. It is now clear that zoning decisions "are to be reviewed by federal courts by the same constitutional standard we employ to review statutes enacted by state legislatures." *Shelton,* at 479. This involves a narrower inquiry than does judicial review of adjudicative conduct. Thus, legislative purpose need not be proved as an historical fact. *Shelton,* at 484.

4. The jurisprudence also reflects that this same rational basis test is fundamental to the Court's analysis of alleged violations of the Equal Protection Clause. See *Metropolitan Life Insurance Co. v. Ward,* 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985); *Horizon Concepts, Inc. v. City of Balch Springs, et al,* 789 F.2d 1165 (5th Cir.1986).

dation of the Chairman. (Plaintiffs' observation that the original application to construct the condominiums was approved is without support in the record).

■ Plaintiffs' argument that the City's actions with respect to the application for a permit to build a hotel complex instead of the condominium project were arbitrary and capricious also fails. Although plaintiffs claim that the City acted without reason in revoking their building permit within days of its issuance, the record reflects that the basis for that revocation was that the permit, along with many others, was issued by a temporary building inspector who had not been confirmed by the City Council as required by the local zoning regulations. The City Council concluded that the permits were invalid, and revoked them all. The Court will not second-guess the expertise or judgment of the Council in municipal zoning matters, or their chosen manner of addressing the perceived infirmities created by the issuance of such interim permits. *Shelton* speaks to that issue. As stated in *Shelton, supra* at 481, "to require the state to prove the validity of its choice is quickly the right to change the legislative process itself". Plaintiffs' argument that the hotel permit was validly granted because almost anyone working in the Mandeville City Hall approved building permits is wide of its target in light of *Shelton's* instruction that an articulated rational basis proferred by the Council for its decision is sufficient to meet the requirement of substantive due process. Furthermore, even if a tacit policy of acquiescence existed regarding the undisciplined issuance of building permits by unqualified building inspectors and others, revocation of the permits could not necessarily be said to be irrational if the failure to do so would "formally validate noncompliance with the ordinance". *Shelton, supra* at 485.

■ It is equally clear that the Council's decision to declare a moratorium on the issuance of any building permits regarding plaintiffs' site until the pending ordinance to rezone the property had been resolved one way or the other was also a fair exercise of its police power, and was indisputably related to the general welfare. Passage of an ordinance which in effect invalidates a pending building permit is an ordinary and necessary power of local zoning bodies. *Jacobson v. City of New Orleans*, 166 So.2d 520 (La.App.1964). Whether or not the building permit was pending, the *Shelton* question is the same: Whether it "is at least debatable" that the City had a "conceivable rational basis" for its decision? Clearly, it did. Plaintiffs' reliance on *Wheeler v. City of Pleasant Grove*, 664 F.2d 99 (5th Cir.1981), *cert. denied* 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982) is mistaken. In *Wheeler*, the plaintiff developers had already been granted a validly authorized building permit and construction had commenced. Here, the permit was extended by one not authorized to do so, as required by the zoning regulations. In addition, in *Wheeler*, the Court concluded that the zoning ordinance in question bore no substantial relation to the general welfare; here, the actions by the City and its officials were related to the general welfare and that has not been disputed on this Motion.

■ Next, plaintiffs' claim that the City Council's actions were arbitrary and capricious, because all of the other permits were subsequently granted by the properly confirmed building inspector, ignores the public concern generated by plaintiffs' construction requests; moreover, it is important to note that, as to plaintiffs' property, an ordinance to rezone the property in conformance with the surrounding neighborhood was pending. Such an argument also ignores that a similar claim was presented in *Shelton* without success.

■ Plaintiffs' reasoning that the City acted in an arbitrary and capricious manner by failing to issue a permit to build the hotel during the day on January 12, 1984 (before the Council met in the evening to reintroduce the ordinance to have additional time to consider it) is specious and is rejected. It ignores the Council's duty of orderly investigation and deliberation.

Finally, plaintiffs' demand that they were impermissibly singled out by the passage of the zoning ordinance which precluded the proposed commercial development of their property fails to raise a genuine issue of material fact sufficient to avoid summary judgment under *Shelton.* It is true that the proposed zoning ordinance related solely to plaintiffs' tract of land, but that does not lessen the Court's measure of the substantive due process claim according to *Shelton.* The question still is whether there was some rational basis, related to the general welfare, for the proposed classification. See *Schafer v. City of New Orleans,* 743 F.2d 1086 (5th Cir. 1984); *Four States Realty Co., Inc. v. City of Baton Rouge,* 309 So.2d 659 (La.1975). Surely, there was. The minutes of the Planning and Zoning Commission, which unanimously endorsed the zoning ordinance, as well as the City Council, which unanimously passed the measure, clearly reflect substantial community support for the ordinance and concern articulated by both local residents and city officials for preserving and maintaining the residential character of the area. The uncontroverted affidavits of the officials of the Planning and Zoning Commission and the City Council establish that their decision was predicated and driven by the overwhelming support of the community for the measure, the general welfare of the community, and the perceived adverse effect of the proposed commercial project on the residential character of the neighborhood, its density, and on the sewerage, water and roadway systems of the surrounding neighborhoods. The legitimacy of the proferred legislative objectives is beyond doubt.

## IV

The Fifth Circuit has previously recognized that "[t]he power to channel growth through zoning is 'one of the firmest and most basic of the rights of local control' ... and where a community expresses that power as part of 'a rational and understandable effort to deal with a perceived evil', ... a federal challenge cannot be sustained in the district court". *Couf v.*

*DeBlaker,* 652 F.2d 585, 588 (5th Cir.1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982). Local zoning officials and bodies are most familiar with the public needs and with evaluating the peculiar suitability of particular land area uses. This Court has no mandate to supplant or alter the legislative judgment. Further, "[i]nterim development controls such as ... moratorium have been found to play an important role in municipal planning" because "[t]hey aid in 'bridging the gap between planning and its implementation into legal measures' ". *Schafer, supra* at 1090. The moratorium in Mandeville served precisely that purpose.

In conclusion, there is no genuine issue of material fact that a conceivable rational basis supported the zoning decisions of the acting bodies of Mandeville. Plaintiffs' substantive due process and equal protection claims must fall. See *South Gwinnett Venture v. Pruitt,* 491 F.2d 5 (5th Cir.1974) (en banc), *cert. denied* 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974).

Similarly, plaintiffs' procedural due process claim is without merit. Even assuming that any constitutional interests were at stake which would trigger a procedural due process inquiry, the record is clear that plaintiffs were given due notice of the many meetings of the Commission and the Council regarding the rezoning of the property, and that they had an adequate opportunity to participate and to be heard. They had full opportunity to present their case, and did so. Thus, their can be no question that any procedural due process requirements which might attach to the City's actions were patently met. See *Horizon Concepts, Inc. v. City of Balch Springs, et al, supra* at 1168; *Schafer v. City of New Orleans, supra* at 1089; *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822 (1 Cir.1982), *cert. denied* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982).

Accordingly, for the foregoing reasons,

IT IS ORDERED:

Defendant's Motion for Summary Judgment as to plaintiffs' substantive and pro-

**1114**

cedural due process and equal protection claims is GRANTED.[5]

Plaintiffs' cross-motion for Rule 11 sanctions is DENIED.

Defendant's request for statutory attorneys' fees under 42 U.S.C. § 1988 is DENIED because this Court is not persuaded that the suit was "frivolous, unreasonable or without foundation." *Christainburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

---

**5.** *Shelton* articulates a core balance of federal-state interests:

"By sharply cutting the deference due state decisions ... would inject federal courts into matters historically the business of states and subject to their police power. It would, more specifically, alter the decisional process for zoning issues. The difference between an inquiry into whether there was any possible rational basis for legislation and an inquiry into the actual basis of legislation is significant."

*Shelton* at 481. This Court construes *Shelton* as applying to all the defendants in this case. See

*Shelton,* dissent at 490. Accordingly, the Court invites counsel's suggestions as to the disposition of the remainder of this case.