**J.G. DUPLANTIS**

v.

**Allen BONVILLAIN, et al.**

**Civ. A. No. 87–1552.**

United States District Court,
E.D. Louisiana.

Dec. 15, 1987.

Gertler, Gertler & Vincent, M.H. Gertler, New Orleans, La., for J.G. Duplantis.

Jerry L. Hermann, Houma, for defendants.

Pullaro & Cuccia, Eddie N. Pullaro, Robert P. Cuccia, Houma, for Edward P. Lyons, Lessa M. Foreman and Dean Babin.

## ORDER AND REASONS

FELDMAN, District Judge.

J.G. Duplantis is the owner and developer of residential and commercial property located in Terrebonne Parish. This dispute arises out of actions taken by the Terrebonne Parish Council and related parties with regard to certain of plaintiff's property. Defendants Allen Bonvillain and Willis Henry are members of the Terrebonne Parish Council; Leesa Foreman is Planning Director. Dean Babin is Building Inspector for the Parish. Other defendants are the Council for the Terrebonne Parish Consolidated Government and the Department of Planning.

The Terrebonne Parish Consolidated Government and its predecessors instituted condemnation proceedings against three

Terrebonne Parish rental properties owned by Mr. Duplantis. The proceedings were conducted pursuant to Section 103.4 of the Houma Building Code. In addition, the Parish issued a citation under Ordinance No. 3866 (the Ugly Materials Ordinance) which regulates junk, trash, garbage and other such material in the public view. The Ugly Materials citation was aimed at plaintiff's Highway 90 property. The properties involved in the condemnation proceedings were located on Garnet Street, McKinley Street and Slatter Street in Houma, Louisiana.

Plaintiff contends that defendants selectively enforced the Ugly Materials Ordinance[1] and Section 103.4 of the Houma Building Code against him in such a manner as to constitute deprivations of Fourteenth Amendment guarantees. His claims target substantive and procedural due process issues, and equal protection deficiencies. Plaintiff asserts that he was denied the right to adequate notice and a fair and impartial hearing in connection with the Slatter Street condemnation. He further claims that both legislative enactments are unconstitutionally vague. Defendants assert a counterclaim for damages, attorneys' fees and costs for the filing of a frivolous complaint.

Defendants now move for summary judgment on plaintiff's substantive and procedural due process claims, as well as his equal protection claims.

## I. THE VAGUENESS ATTACK AND PLAINTIFF'S UGLY MATERIALS

It is an elementary principle of due process values that " 'an enactment is void for vagueness if its prohibitions are not clearly defined.' " *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 1075, 71 L.Ed.2d 152 (1982) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.

2d 222 (1972)). Central to this thought is that people ought not to have to guess about the law's meaning:

"[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."

*Smith v. Goguen*, 415 U.S. 566, 572 n. 8, 94 S.Ct. 1242, 1247 n. 8, 39 L.Ed.2d 605 (quoting *Connally v. General Construction Company*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)).

The offense to due process lies in both the nature and consequences of vagueness. First, vague laws do not give individuals fair notice of the conduct proscribed. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). Second, such laws fuel the possibility of arbitrary and discriminatory enforcement in that they fail to limit law enforcement officials' exercise of discretion. *Grayned*, 408 U.S. at 108–109, 92 S.Ct. at 2298–99. Third, vague laws

"defeat the purpose of, and frustrate the essence of, a constitutional regime. We remain 'a government of laws, and not of men' ... only so long as our laws remain clear."

*City of Mesquite*, 455 U.S. at 290 n. 12, 102 S.Ct. at 1075 n. 12 (citation omitted).

Plaintiff has challenged the Ugly Materials Ordinance[2] as being unduly vague on its face. "To succeed", the Supreme Court teaches, "the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). Mr. Duplantis has failed.

Plaintiff's challenge fails because the Ugly Materials Ordinance is sufficiently

---

**1.** After suit was filed, the Terrebonne Parish Council adopted Ordinance No. 4402, expressly repealing the Ugly Materials Ordinance.

**2.** Defendants urge that the subsequent repeal of the Ugly Materials Ordinance renders this issue moot. However, "it is well settled that a defend-

ant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite*, 455 U.S. at 288–89, 102 S.Ct. at 1074–75.

clear as applied to him; it means what it says. In part, the Ordinance provides that:

"no person, firm, corporation or other legal entity may leave junk, trash, garbage or other ugly material on any property within view of any highway, road, street, alley or other passageway."

Plaintiff's attack focuses on the language "junk, trash, garbage or other ugly material." But those terms neither escape definition nor common sense application. "Junk" is defined as "scrapped material such as glass, rags, paper or metals that can be converted into usable stock." *The American Heritage Dictionary,* 694 (1982). "Trash" means "worthless or discarded material or objects; refuse." *Id.* at 1289. And "ugly" refers to something that is "displeasing to the eye; unsightly or objectionable." *Id.* at 1312. It is undisputed that abandoned motor homes and other discarded metals littered Mr. Duplantis' Highway 90 property. In fact, plaintiff himself acknowledged at a May 28, 1986 public hearing that "400 feet of garbage" rested on his U.S. 90 property. Certainly, a person of ordinary intelligence would understand that the terms "junk, trash, garbage or other ugly material" would encompass the abandoned vehicles and other garbage located on plaintiff's property. Mr. Duplantis himself had to understand that the admitted condition of his property was contemplated by the Ugly Materials Ordinance.

■ Plaintiff makes a similar facial attack on Section 103.4 of the Houma Building Code. Plaintiff's claim is unfounded because he has failed to show that the provision is impermissibly vague in all its applications.

The Code defines what is an unsafe building. Section 103.4 provides:

"All buildings or structures which are unsafe, unsanitary, or not provided with adequate egress, or which constitute a fire hazard, or are otherwise dangerous to human life, or which in relation to existing use constitute a hazard to safety or health by reason of inadequate maintenance, dilapidation, obsolescence, or abandonment, are severally in contempla-

tion of this section, unsafe buildings. All such unsafe buildings are hereby declared illegal and shall be abated by repair and rehabilitation or by demolition in accordance with the provisions of the Standard Code for the Elimination or Repair of Unsafe Buildings."

Plaintiff broadly strikes out at the language used to define proscribed building conditions. But, once again, the meaning of the terms is plain. "Unsafe" means "dangerous; not secure from danger, harm or evil; not free from risk." *The American Heritage Dictionary* at 1084. "Unsanitary" refers to a condition "not free from elements, as filth or bacteria, that endanger health." *Id.* at 1090. "Dilapidate" means "to bring or fall into a state of ruin, decay, or disrepair." *Id.* at 397. "Obsolete" is defined as "no longer in use." *Id.* at 858.

With regard to Mr. Duplantis' Garnet Street property, the building official cited plaintiff for numerous conditions in violation of Section 103.4, including: unsanitary plumbing constituting health hazard; floors, walls, and ceilings structurally unsound and incapable of supporting weight; electric lights and outlets poorly maintained and in unsafe working condition; appliances removed without capping gas piping at connection. The citation was clearly fact-specific. Any person of ordinary intelligence would understand that the terms used in Section 103.4 refer to any one or all of these described conditions. Similarly, the conditions cited with regard to the Slatter Street property are obviously within the reasonable contemplation of the Code. Such violations include: electric wiring exposed and touching pipe and metal; roof rusted and open; eave lumber rotten; front door decayed. Here too, the citation was unqualifiedly fact-specific. As to both the Garnet and Slatter Street properties, the Section 103.4 standard is sufficiently clear to cover the conditions cited by the building official.

## II. THE FIFTH CIRCUIT'S *SHELTON* ANALYSIS

Plaintiff's substantive due process and equal protection claims are governed here

by the unclouded standard set forth by the Fifth Circuit in *Shelton v. City of College Station,* 780 F.2d 475 (5th Cir.1986) and spoken to by this Court in *Abraham v. City of Mandeville,* 638 F.Supp. 1108 (E.D. La.1986), *aff'd,* 814 F.2d 657 (5th Cir.1987).

▪ Mr. Duplantis attacks the constitutionality of both the Ugly Materials Ordinance and Section 103.4 of the Houma Building Code. He has a formidable burden. The Fifth Circuit has made clear that legislative enactments such as these are "not to be declared unconstitutional unless 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" 780 F.2d at 480 (citing *Moore v. East Cleveland,* 431 U.S. 494, 498 n. 6, 97 S.Ct. 1932, 1935 n. 6, 52 L.Ed.2d 531 (1977)).

The expressed legislative purpose of the Ugly Materials Ordinance was to eliminate unsightly conditions in public view in an effort to promote tourism and stimulate economic development in Terrebonne Parish. Concern over the appearance of property lining the major thoroughfares of the Parish is amply supported in the record, articulates a recognition of the general welfare of the community, and provides a rational basis for enactment of the Ugly Materials Ordinance.

▪ Section 101.2 of the Houma Building Code defines the remedial purpose of the Code as the fostering of

"public safety, health, and general welfare—through structural strength, stability, sanitation, adequate light and ventilation, and safety to life and property from fire and other hazards incident to the construction, alteration, repair, removal, demolition, use and occupancy of buildings, structures, or premises."

It is beyond dispute that a building code providing for the condemnation of unsafe and unsanitary structures is substantially related to the public health, safety, morals and general welfare. And so Mr. Duplantis' frontal assault on the two legislative enactments must fail.

So much for the enactments themselves. What about their application? Does their application nevertheless implicate some constitutional infirmity? No. The legislative mode of analysis applies as well to plaintiff's attacks on the specific application of these ordinances. *Shelton,* 780 F.2d at 480. The Fifth Circuit instructs that:

"[i]n the absence of invidious discrimination, suspect classifying criteria, or infringement of fundamental interests, [all of which are absent in this case], our review of these quasi-legislative decisions is confined to whether the decisions were 'arbitrary and capricious.'"[3]

*Shelton,* 780 F.2d at 477. The Fourteenth Amendment's requirement of substantive due process is met if there was "any conceivable rational basis" for the legislative decision. *Id.* It is important to underscore that federal judicial interference with a municipality's quasi-legislative decisions "is proper only if the governmental body could have had no legitimate reason for its decision." 780 F.2d at 483 (citing *Minnesota v. Clover Leaf Creamery Company,* 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981)). That is central to our federal-state structure, and provides the essential backdrop to any *Shelton* analysis:

"The key inquiry is whether the question is 'at least debatable.' *See Clover Leaf Creamery,* 449 U.S. at 464 [101 S.Ct. at 724]. If it is, there is no denial of substantive due process as a matter of federal constitutional law."

780 F.2d at 483.

Applying *Shelton* to the local governmental conduct in dispute in this case[4], this

---

**3.** It is clear that zoning decisions are quasi-legislative. 780 F.2d at 479. While there is no bright line between legislative functions and administrative actions, the decisions at issue in this case are sufficiently analogous to those in *Shelton* to employ the legislative model of analysis. The conduct under scrutiny, like zoning decisions, functionally limits one's use of

property as a consideration of the public welfare. While plaintiff urges that application of the Houma Building Code is quasi-judicial, the case on which he relies does not clearly articulate that proposition. *Tatum v. Village of Converse,* 440 So.2d 1354 (La.App.1983).

**4.** "The jurisprudence also reflects that this same rational basis test is fundamental to the Court's

Court finds that there is no denial of substantive due process as a matter of federal constitutional law. As in *Shelton*, plaintiff, who challenges the legislative judgment, has failed to

"convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker."

*Shelton*, 780 F.2d at 479.

◼ The Court finds that the application of the Ugly Materials Ordinance with regard to plaintiff's Highway 90 property, and the application of Section 103.4 to plaintiff's Garnet Street and Slatter Street properties was not arbitrary and capricious. The evidence in the record establishes that the U.S. 90 property was in fact covered with "junk" and "trash" as contemplated by the Ordinance. With regard to the Garnet and Slatter properties, the building official cited plaintiff for a number of conditions said to be in violation of Section 103.4. While plaintiff claims that his properties were in compliance with the Building Code, he points to no evidence to support this naked assertion. And naked assertions are not enough. A party opposing summary judgment cannot rest on only a conclusory allegation unsupported by facts placed before the Court. *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1195–96 (5th Cir.1986). On this record and this Motion the unopposed factual determinations of the building official provide at the very least a "conceivable rational basis" for the decisions.

◼ Plaintiff further contends that the defendants' actions were arbitrary and capricious because others were not cited under the same ordinances. However, these claims are not supported in the record. The Ugly Materials Ordinance was in effect for only a short while. During that time, another property owner was also issued a citation for having junk and other ugly material in public view. Similarly, the record is clear that Terrebonne Parish has

analysis of [plaintiff's] alleged violations of the Equal Protection Clause." *Abraham v. City of Mandeville*, 638 F.Supp. at 1111 n. 4. *See Foret*

conducted numerous condemnation proceedings pursuant to Section 103.4 of the Houma Building Code. In any event, the

"question is the same: Whether it 'is at least debatable' that the City had a 'conceivable rational basis' for its decision? Clearly, it did."

*Abraham*, 638 F.Supp. at 1112.

In conclusion, there is no genuine issue of material fact that a conceivable rational basis supported the decisions of the acting bodies of Terrebonne Parish. Accordingly, plaintiff's substantive due process and equal protection arguments must fall.

### III. PROCEDURAL DUE PROCESS CLAIM

◼ The *Shelton* analysis does not dispose of plaintiff's procedural due process claim. Mr. Duplantis alleges a violation of procedural due process with regard to the Slatter Street condemnation alone. Summary judgment on this issue is inappropriate because a genuine issue of material fact remains unresolved concerning whether plaintiff was afforded adequate notice of the Building Code violations.

### IV. CLAIMS OF IMMUNITY

◼ It is settled that legislators are entitled to absolute immunity from federal damage claims for conduct while acting in a legislative capacity. *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1193 (5th Cir. 1981). Executive officials are similarly protected when performing legislative functions. *Id.* at 1193–94. Having determined that the matters complained of were legislative in nature, the immunity defense insulates the individual defendants. There is no question that they acted in their official capacities. Of course, the defense of absolute immunity does not apply to the municipality itself. 643 F.2d at 1195–1200. Therefore, the individual named defendants are dismissed from this suit.

*v. Marullo*, No. 85–2705 (E.D.La. Jan. 12, 1987) [Available on WESTLAW, 1987 WL 5600], *aff'd*, 827 F.2d 767 (5th Cir.1987).

## V. PRESCRIPTION

The parties agree that Louisiana's one-year statute of limitations applies in this Section 1983 action. An action under Section 1983 accrues "when plaintiff knows or has reason to know of the injury which is the basis of the action." *Lavellee v. Listi,* 611 F.2d 1129, 1131 (5th Cir.1980). *Lavellee* constructs a two-part test:

> "Until the plaintiff is in possession of the 'critical facts that he has been hurt and who has inflicted the injury,' the statute of limitations does not commence to run."

611 F.2d at 1131.

Defendants contend that the condemnation claims concerning the McKinley, Garnet, and Slatter Street properties are time-barred. Plaintiff concedes that a cause of action based on the McKinley Street condemnation is prescribed. Mr. Duplantis' Slatter Street property was condemned at the November 19, 1986 public hearing. The first condemnation hearing regarding the Garnet Street property was scheduled for August 27, 1986. Plaintiff filed this suit on April 6, 1987, well within the statute of limitations.

## CONCLUSION

Accordingly, for all of the foregoing reasons, defendants' motion is GRANTED in part and DENIED in part. Plaintiff's substantive due process and equal protection claims are dismissed. The individual defendants are also dismissed from this suit. Defendants' counterclaim is without merit. While plaintiff was unsuccessful as to a number of his claims, the suit was not frivolous so as to justify the awarding of costs and attorneys' fees. Plaintiff's procedural due process claim with regard to the Slatter Street condemnation remains.