## No. 13,696.

### JAMES O'ROURKE vs. CITY OF NEW ORLEANS, ET ALS.

#### SYLLABUS.

##### ON MOTION TO DISMISS.

Acts of acquiescence must be averred with sufficient particularity to make it evident, if the proof be as alleged, that the intention of the person charged with having acquiesced in a judgment was to comply with the judgment.

O'Rourke vs. New Orleans et als.

ON THE MERITS.

1. Although the defendants had the authority to have a building demolished as unsafe, yet upon judicial investigation they must sustain the order to tear down the building by sufficient evidence.

2. The defendants acted in good faith. The error was one of judgment for which the defendants, under the circumstances, cannot be held in damages.

APPEAL from the Civil District Court, Parish of Orleans.— King, J.

*Benjamin Rice Forman,* for Plaintiff, Appellee.

*M. Dracos Dimitry,* Assistant City Attorney, and *Samuel L. Gilmore,* City Attorney, for Defendants, Appellants.

The opinion of the court was delivered by

BREAUX, J.  Plaintiff in injunction sought to restrain the defendants from tearing down a building of which he is the owner.

With reference to the facts, we are informed by the evidence that the city engineer, Mr. Bell, made an examination of this building, but did not condemn it at the time.  The engineer, acting as he had a right to do, upon the report of one of the assistants in his office (and not upon personal re-examination after his first examination, some six months previous), notified the Commissioner of Public Works that plaintiff's building was gradually moving toward the street; that the building was out of plumb to an extent that it had become dangerous to let it stand.  The engineer informed the commissioner of the fact that attempts had been made to "tie the building with tie rods, but as these tie rods are pressed through the party walls between his, plaintiff's building, and the two-story warehouse next to it, the movement of the building is carrying this party wall with it."  (Quotation from the letter of the engineer, before referred to, to the commissioner.)

After this examination had been made, the commissioner gave notice to plaintiff, based on the city engineer's letter, of the unsafe condition of his building, and directed him to take down his building within three days from the date of notice, or the building would be taken down by the city.  After the three days had elapsed, the workmen for the city commenced to tear down the building, but this was stopped by the injunction now before us for decision.

The defendants, in the examination of plaintiff's building, in giving

notice to plaintiff, and in attempting to tear down the building, were acting under Ordinance No. 6533 of the Council, which provides that whenever a building is dangerously unsafe, with the approval of the Mayor, the commissioner, after notice, is authorized to take it down.

The judgment in the District Court was pronounced for plaintiff, maintaining the injunction. The defendants appealed. Before this court, the defendants moved to dismiss the appeal, on the ground that plaintiff had acquiesced in the judgment by demolishing the building which defendants contended was unsafe and erecting another on the same site. Counsel for the city also suggested, in argument, that this court is without jurisdiction *ratione materiae,* for the reason, that the amount involved is less than two thousand dollars.

There is no merit in the motion to dismiss on the ground of acquiescence. The mere fact that the plaintiff chose to take down this building some time after he had received notice to take it down is not, in itself, sufficient to justify us in holding that he thereby abandoned his injunction and complied with the city's notice to take it down, and, besides, the affidavit filed herein as a basis of the motion is not dated, and does not indicate whether the building was taken down after, or before, the case had been finally decided by the District Court.

If it was taken down before the judgment had been finally rendered, it would scarcely be a timely issue to be presented on appeal. In the second place, we note the suggestion made in argument by defendants' counsel, that plaintiff has reduced his demand to less than the lower limit of the court's jurisdiction only to say that while it is true that plaintiff in his answer to the appeal asks that the judgment of the District Court be amended so as to allow him fourteen hundred dollars as follows: Five hundred dollars to pay his attorney's fees, and nine hundred dollars for loss of rent. In our view, the controversy between the parties is not reduced to these fourteen hundred dollars.

Plaintiff alleged, in substance, in his petition for an injunction, that the building which the defendants were attempting to demolish was worth more than two thousand dollars. On this appeal, he seeks to have the judgment sustaining his injunction affirmed in which a right is involved alleged to be worth more than two thousand dollars to the plaintiff; the matter is, therefore, within this court's jurisdiction, even if no account be taken of the fourteen hundred dollars to which we do not understand that the issues are limited. Both, as related to the jurisdiction only, are before us for determination, viz: the right

claimed as growing out of the attempt to demolish the building, and the claim for fourteen hundred dollars before mentioned. The motion and application to dismiss are denied.

Taking up the merits of the case for decision, we are informed by the evidence that the building of plaintiff, made of brick, fronted on South Peters street. The wall was about forty-five feet in height and had twenty feet front, and ran back on St. Joseph street one hundred and twenty feet.

The city engineer, at the time, Mr. Brown (the administration no longer in office, when the city undertook to have plaintiff's wall taken down), called the attention of the owner to the leaning wall in question. The defect was remedied to the satisfaction of this officer, who was no longer in office when the case was tried, but was a witness on the trial, and said that it was absolutely impossible for the wall to fall; that it was in the same condition it was in in 1893, or 1894, when it was anchored, in compliance with notice he had given to the plaintiff.

The builder of a two-story warehouse, adjoining the building in question, testifies that he thoroughly anchored the building complained of to the new building which was also owned by the plaintiff; that rods were placed near each other (about five feet one from the other) from the outside of the wall on St. Joseph street, straight through the party wall of the new adjoining warehouse. Four experienced builders testified that the wall complained of, braced as it was, was not dangerous; that it was impossible for the wall to fall without carrying down with it the warehouse to which it was strongly anchored.

It appears that iron clamps were fastened on the outside of the wall to the ends of iron tie rods connecting it with the opposite wall to prevent further leaning or bulging. This work had been done, we understand, in a manner satisfactory to the city authorities at the time. The assistant city engineer, upon whose report the commission acted, said that the wall is not safe unless it is tied very well and anchored. He never looked inside to see if it was tied and anchored, and did not know that the tie rods ran through the building from St. Joseph street on to, and through the party wall of the adjoining warehouse. He examined the wall exclusively on the outside, and did not make such an inspection as should have been made under the circumstances.

The city authorities, who sought to have the building demolished, were of the opinion that the wall complained of was not safe because it (owing to the tie rods attached to the adjoining building) was pulling down or causing the new party wall to lean also, and that it would

carry down with it in its fall all the walls to which this St. Joseph street wall was braced by tie beams.

The witnesses for the plaintiff, on the other hand, testified that the anchors were amply strong to hold the wall; that the party wall was not giving away at all; that there was nothing about the roof, the beams, or the walls to indicate that the party wall adjoining the building in question was at all taken out of plumb by pressure. No serious effort was made to meet this evidence of defendants' witnesses.

The weight of the evidence is with the plaintiff. This was the opinion of the district judge who heard the number of witnesses who testified. We have not discovered that he erred. In our view, the city had the authority to take down the building after notice given as in this case, but when issue is raised as to the dangerous condition *vel non* of the building, she should sustain her action with sufficient testimony. In this case she has not succeeded.

In the next place, in the order of the issues, we have already noted that plaintiff, in his answer to the appeal, lays claim to damages in the sum of fourteen hundred dollars. No demand was made for this amount in the District Court. No proof was offered specifically to prove up this claim.

Ordinarily, plaintiff in injunction is not entitled to damges in the amount of the fee of attorney. The city's attempt was not arbitrary; the officers throughout acted in good faith, and if they erred, they erred on the safe side. Under the circumstances, we feel that it would not be just for us to hold the city responsible for the damages claimed. While with the light before us the wall in question is made to appear as having been strong enough, taken as a whole, the position of plaintiff is not such as to give right to judgment for damages in reconvention.

The judgment is therefore affirmed.