440 So.2d 1354 (1983)
Sion Smith TATUM and Helen Myers Tatum, Plaintiffs-Appellants,
v.
VILLAGE OF CONVERSE, Defendant-Appellee.
No. 83-188.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1983.
Rehearing Granted and Opinion Amended January 12, 1984.
Writ Denied January 16, 1984.
Lunn, Irion, Switzer & Salley, Michael S. Hubley, Shreveport, for plaintiffs-appellants.
Don M. Burkett, Many, for defendant-appellee.
*1355 Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
GUIDRY, Judge.
This case arises out of action taken by the Town Council of the Village of Converse, condemning and ordering the demolition of a building owned by the plaintiffs, Sion Smith Tatum and Helen Myers Tatum, which building is located in the Village of Converse. Pursuant to LSA-R.S. 33:4764, the Tatums appealed the decision of the Town Council by filing suit against the municipality in the Eleventh Judicial District Court praying that the order of condemnation be vacated. Plaintiffs also prayed for damages and attorney's fees. After trial de novo, the district court affirmed the order of the Town Council ordering demolition of plaintiffs' building. From the judgment of the district court, the Tatums were granted a suspensive appeal but failed to post bond. The appeal is therefore devolutive.
Appellants' specifications of error present three issues which may be summarized as follows:
(1) The trial court erred in finding that there was sufficient evidence establishing that the building was in a dilapidated and dangerous condition which endangered the public welfare such as to justify demolition;
(2) The trial judge erred in finding that appellants were afforded due process of law by the Town Council of the Village of Converse; and,
(3) The trial judge erred in failing to award damages and attorney's fees.

FACTS
Some time prior to May, 1982, the Town Council devised a plan to clean up and beautify the Village of Converse, which plan included the demolition of dilapidated buildings. On or about May 1, 1982, a report was submitted to the Town Council by Alderman Troy Terrell recommending that plaintiffs' building, situated on Lot 8 of Block 27 of the Village of Converse, be demolished.
Presumably, one William Dyess, an attorney of Many, Louisiana, was appointed to represent the non-resident owner of the property.[1] Pursuant to his appointment, Mr. Dyess, on May 17, 1982, notified by certified mail with return receipt, one Ms. Emma Mae Tatum, who Dyess thought to be the owner, that the subject property would be discussed at a town council meeting at 6:00 p.m. on May 31, 1982. Dyess further advised Ms. Tatum that she would be required to show cause at that meeting why the building should not be condemned for the reason that it was in a dilapidated and dangerous condition which endangered the public welfare. The aforesaid notice was received by Ms. Emma Mae Tatum on May 20, 1982. The record reflects that on the aforesaid dates the property in question was owned by plaintiffs and not by Ms. Emma Mae Tatum, the latter having conveyed the subject property to plaintiffs prior to the submission of the May 1, 1982 report by Alderman Terrell to the Town Council. After receipt of the aforementioned notice, Emma Mae relayed same to plaintiffs, her son and daughter-in-law.
Mrs. Helen Myers Tatum traveled from Odessa, Texas to Converse for the May 31, 1982 meeting and made an appearance contesting the demolition of the property. The minutes of the May 31st meeting reflect that the council agreed that the Mayor and two construction experts would meet with Mrs. Tatum at the building site following the meeting to determine the feasibility of repairing the building. The Mayor and the two experts were to make a list of the required repairs and report back to the *1356 council. Although the minutes of this meeting reflect that Mrs. Tatum was given 30 days in which to show some sign of improvement or in which to demolish the building, there was no motion or vote at that time which would constitute an official action by the town council.
On June 4, 1982, Mrs. Helen Tatum met with the mayor and a construction expert, Mr. Sistrunk, at the building for approximately 15 minutes for inspection. Later that same morning, the building was also inspected by Mr. Rivers, also a construction expert. The inspections resulted in an apparent concensus that unspecified repairs were necessary.
The plaintiffs thereafter contacted several contractors but were unable to get a bid on the required repairs. In July, the plaintiffs returned to the Village of Converse to work on the building themselves. The work was interrupted when a representative of the State Fire Marshall's Office informed the Tatums that they needed a permit in order to continue the repairs. During their stay, Mrs. Helen Tatum read in the local newspaper that a Town Council meeting was scheduled for the 12th day of July and decided to attend the meeting. The Council took advantage of her appearance at this meeting to again discuss the building. The minutes of the July meeting reflect that Mrs. Tatum informed the Council that she and her husband had commenced repairs but they were unable to give the Council a completion date. The Council decided that a firm decision on whether to order demolition or whether to allow additional time for repair of the building would be made at its next meeting scheduled for August 2, 1982.
On July 15, 1982, the Tatums obtained a plan approval from the State Fire Marshall's Office and continued to work on the building.
On August 2, 1982, the Town Council again met and discussed the demolition of the building. Mrs. Helen Tatum was present at this meeting although she was not formally notified of this hearing and its purpose as required by LSA-R.S. 33:4762[2]. Mrs. Tatum informed the Council that she had spent approximately $2,000.00 in material alone on repairs and that she intended to spend up to $30,000.00 in future repairs. The Council, nevertheless, voted unanimously at this meeting to condemn the building.
After trial de novo, the district court affirmed the order of the Town Council finding that the building was in a dilapidated and dangerous condition which endangered the public welfare at the time the Council acted on August 2, 1982. Plaintiffs appeal from that decision.
LSA-R.S. 33:4761 et seq. provide various procedural protections and substantive restraints before a municipality can condemn a building without compensation. It is axiomatic that statutes providing for *1357 these procedural protections and substantive restraints must be strictly construed. Housemaster Corp. v. City of Kenner, 374 So.2d 1240 (La.1979). The power of the municipality, under this statutory scheme, is limited to the condemnation of buildings which are in a dilapidated and dangerous condition which endangers the public welfare. LSA-R.S. 33:4761.
Before condemning a building, the municipality must give the owner sufficient notice and a hearing to satisfy governmental responsibility to accord due process of law. Housemaster Corp. v. City of Kenner, supra; LSA-R.S. 33:4762.
After proper notice and hearing,[3] if the facts justify it, the governing authority shall order condemnation or may in its discretion grant the owner the option of making repairs to correct the dangerous condition, specifying the defects to be corrected, the allowable delay, and the general nature and extent of the repairs to be made. LSA-R.S. 33:4763.
The decision of the governing authority is not final if appealed from within five days and the owner may contest the legality or propriety of the decision or order of the governing body by trial de novo in the district court. LSA-R.S. 33:4763 and 33:4764. When the legality or propriety of the decision or order of the governing body is contested by the owner as provided by statute, the burden is on that body to sustain its action with sufficient evidence. O'Rourke v. City of New Orleans, 106 La. 313, 30 So. 837 (1901), and Miles v. District of Columbia, 166 U.S.App.D.C. 235, 510 F.2d 188 (D.C.Cir.1975).
We entertain serious doubt as to the validity of the condemnation resolution because of the Village's failure to strictly comply with the notice requirements of LSA-R.S. 33:4762. However, we need not further consider this issue as our careful review of the record, in light of the legal principles above set forth, prompts the conclusion that the trial court manifestly erred in its conclusion that the Tatum building, on August 2, 1982, was in a dilapidated and dangerous condition which endangered the public welfare.
The trial court held, and we agree, that the proper inquiry is the condition of the Tatum building at the time the Council acted, i.e., August 2, 1982.
Alderman Troy Terrell, the member of the Town Council in charge of building inspection who recommended demolition in his written report to the Council, was admittedly not an expert. His only inspection was on May 4, 1982 and was limited to the exterior of the building.
James Sistrunk and Sammy Rivers testified as building and construction experts for the Town. They were both of the firm opinion that on June 4th, their inspection of the building revealed that the south wall was in a dilapidated and dangerous condition which endangered the public welfare.[4] This was Mr. Sistrunk's only inspection. Mr. Rivers testified that he inspected the building again a few days before trial, which we will discuss later.
Edward F. Darnell, inspector of new construction with the Department of the State Fire Marshall who ordered the Tatums to cease construction until they obtained a plan approval from the State Fire Marshall, also testified on behalf of the Town. His only inspection was on July 6, 1982, at which time the Tatums had torn out part of the south wall to make the required repairs. He testified that the building was in a very poor dilapidated condition at that stage and that he therefore granted temporary authority to continue work to secure the south side of the building. He further testified that he did not know the present condition of the building because he had not been back to the building. Although all of the above testimony supports the conclusion that the building, specifically the south wall of the building, presented a menace to the public safety and welfare, as of July 6, 1982, the Council took no action on this building until August 2, 1982. The record reflects that at the August 2nd hearing, the Council was advised that the Tatums had made substantial repairs to the building.
*1358 At the trial de novo, evidence was introduced as to the extent of these repairs. The Tatums introduced photographs of the repairs made and testified that the repair work done on the south wall had been completed by August 2, 1982. The repairs consisted of replacing the rotted studs and sills, repairing floor joists, and re-siding the outer wall. Mr. Rivers, reinspected the building a few days prior to trial, including the repairs made prior to the August 2, 1982 council meeting. He testified that the south wall looked presentable and that whoever had done the carpentry work did a pretty good job. Mr. Sistrunk, when shown a photograph of the repairs made to the south wall, commended that it looked good to him. Therefore, the only evidence in the record pertaining to the condition of the building at the time the Council acted supports the conclusion that the dilapidated condition which endangered the public welfare no longer existed. We therefore conclude that the Village of Converse failed to sustain its action with sufficient evidence and the trial court manifestly erred in holding to the contrary.

DAMAGES AND ATTORNEY'S FEES
Plaintiffs claim that they are entitled to attorney's fees and damages, i.e., their expenses in traveling from Odessa, Texas to the Village of Converse and mental anguish. Although plaintiffs introduced evidence at trial of the expenses they incurred in traveling to Converse, they have provided us no basis or authority for an award of attorney's fees and damages against the Village. The Village had specific statutory authority to pursue the course of action taken. Its attempt was not arbitrary or in bad faith. Plaintiffs are not entitled to the recovery of damages or attorney's fees.
For the above and foregoing reasons, the judgment of the trial court insofar as it affirms the order of the Town Council of Converse ordering demolition of the plaintiffs' building is reversed and judgment is rendered in favor of plaintiffs vacating and setting aside the condemnation order of the Town Council of Converse. The judgment of the trial court is affirmed insofar as it dismissed plaintiffs' claim for damages and attorney's fees. Costs on appeal and in the trial court, to the extent allowed by law, are assessed against defendant, the Village of Converse.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.

MOTION FOR REHEARING
We have granted a rehearing in this matter for the sole purpose of correcting our original opinion, rendered on November 9, 1983, which opinion incorrectly stated that the plaintiffs-appellants failed to perfect their suspensive appeal by timely filing the proper bond. After our opinion was rendered, the attorney for the plaintiffs-appellants furnished us with a receipt from the Clerk of Court, Parish of Sabine, Eleventh Judicial District Court showing that a cash bond had been timely filed but inadvertently omitted from the record.
For the reasons assigned, our opinion is hereby amended to read "the Tatums were granted and perfected a suspensive appeal" which will replace the language "the Tatums were granted a suspensive appeal but failed to post bond. The appeal is therefore devolutive." In all other respects our opinion and judgment as originally rendered is maintained.
REHEARING GRANTED AND OPINION AMENDED.
NOTES
[1] Although it is not made clear in the record, apparently William Dyess received his appointment from the Eleventh Judicial District Court. LSA-R.S. 33:4762(B) provides for service of notice upon an attorney appointed to represent the absentee owner by the Mayor of the Village.
[2] LSA-R.S. 33:4762 provides in pertinent part as follows:

"A. Before the governing authority may condemn any building or structure, there must be submitted to it a written report recommending the demolition or removal of the building signed by some city official or other person authorized to act in such matters for the municipality. The mayor or chief executive shall thereupon serve notice on the owner of the building or structure requiring him to show cause at a meeting of the governing authority, regular or special, why the building or structure should not be condemned. The date and hour of the meeting shall be stated in the notice which shall be served at least ten days prior to the date of the hearing, except in case of grave public emergency as hereinafter provided. The notice may be served by the marshal of the municipality or by any sheriff or deputy sheriff or constable having jurisdiction and power to serve legal process where the owner of the building or structure is found in the state of Louisiana, and the officer shall make return of the service as in ordinary cases.
B. If the owner is absent from the state or unrepresented therein, then the notice shall be served upon the occupant of the condemned building or structure, if any, and also upon an attorney at law appointed by the mayor to represent the absentee. Domiciliary service may be made as in ordinary cases."
[3] In Housemaster Corp. v. City of Kenner, supra, our Supreme Court determined that formal notice upon the actual owner pursuant to the provisions of 33:4762 was sacramental to the validity of any subsequent resolution by the governing body ordering the condemnation and demolition of a building under the authority of LSA-R.S. 33:4764 et seq.
[4] Although the record indicates that the building was run down and basically an eyesore, the only evidence of dilapidation which presented a danger to the public welfare pertained to the south wall. The sills, studs and floor joists were rotted and the wall had no support.