NORRIS, Judge.
On June 17, 1986, pursuant to LSA-R.S. 33:4761 et seq., the City Council of the City of Bossier City [Council] ordered that the structures on a certain piece of property be demolished or removed. The owner of the property, Automated Building Corporation [ABC], appealed this order to the district court. The district court de novo trial lasted for five days. After the trial counsel for ABC first raised the issue of whether the Council had given proper notice of its hearing to the owner of the property, pursuant to R.S. 33:4762. The trial judge held that ABC’s appearance at the Council meeting waived the requirement of notice, and further held that the City had borne its burden of proving that the structures were dilapidated and dangerous and endangering the public. The court affirmed the decision of the Council, ordering that the buildings be removed or destroyed. ABC appeals to *673 this court with two assignments of error. For the reasons expressed, we affirm.
FACTS
On June 17, 1986 the Council held a public meeting to consider the condition of ABC’s property at 100 West Thompson Street in Bossier City. Pursuant to that meeting, the Council ordered that the improvements to the property be demolished and/or removed within 60 days. ABC appealed the Council’s decision to the district court, where it received a de novo trial.
At the trial, there was considerable evidence adduced as to the condition of the buildings at the time of the June 17, 1986 Council hearing, as well as ABC’s dealings with the property. The plaintiff’s witnesses included Vem Wilburn, John Bowman, Robert Bridges, and Archie Epps. The defendant called, among others, Roy Gene Hicks, Sr., Carl Combs, David E. Richardson, Harvey Hill, and Ella Friedel.
ABC purchased the property March 11, 1985. At the time ABC purchased the property there were 16 buildings on the property which were 40-50 years old. The gas, water and electricity had been previously shut off, and were never turned back on. The buildings had been condemned as unfit for human habitation. On October 4, 1985 ABC moved 11 additional buildings onto the property. These were frame houses, which Mr. Archie Epps, president of ABC, testified were 20-25 years old. The houses were set up on concrete blocks in what Epps characterized as a temporary measure.
Mr. Wilburn, formerly a city engineer for the City of Bossier City, testified that the buildings which had been moved onto the property were never set up in a safe manner. He stated that he was not as concerned about those buildings which were already on the property, but that the floors in several of those units were unsafe.
Mr. Hicks, the Electrical Inspector for the City of Bossier City, testified that the electrical systems in the buildings were in a dilapidated and dangerous state, and had not been brought up to code. Mr. Hicks conceded that there was no immediate danger while there was no electricity running to the buildings.
Mr. Combs, of the Bossier City Fire Department Fire Prevention Bureau, testified that adequate fire protection was not afforded to the buildings located on the property. A flow test on the fire hydrant nearest the property performed in late May or early June of 1986 showed that the hydrant would yield only a little over half the minimum requirement of 500 gallons per minute. He also said that the 11 buildings which had been moved onto the property were inadequately spaced, and fire trucks would not be able to maneuver properly. Mr. Combs further said that due to the general state of disrepair affecting the buildings, a fire would bum rapidly and spread. He testified that the structures were endangering the public because of this.
Mr. Richardson, the Assistant Chief of the Bossier City Fire Department Fire Prevention Bureau, testified that the age of the buildings and their close proximity to each other created a hazardous fire condition. He also said that there was not adequate water pressure in the adjacent fire hydrant, as shown by the pressure tests performed June 6, 1986.
Mr. Hill, a City of Bossier City Housing Inspector, testified that he had visited the West Thompson Street property before and after it was acquired by ABC, and classified any progress in reconditioning the buildings located there as “minimal.” He said the buildings were in a dilapidated and dangerous condition. Mr. Hill specified that the additional buildings presented a danger to the public because the manner in which they were propped up on bricks made them liable to fall, and they also presented a fire hazard. He considered the pre-existing structures to be dilapidated and hazardous also, citing structural damage, substandard flooring, rotten flooring overlay, holes in the roof, and general dilapidation.
Ms. Friedel, Director of Permits and Inspections, testified that only two permits had been given on the project. One was a *674 permit to move additional buildings onto the land.[1] The other was a rehabilitation permit for the pre-existing structures, issued March of 1985, which expired in six months because no work of value had been commenced. Ms. Friedel testified that at the time of the Council hearing the buildings were basically in the same condition as when ABC purchased them. She felt that the structures were still dilapidated, unsafe and dangerous. Some specific problems she delineated were that the bedrooms did not have openable windows; the doors were missing hardware; the window panes were broken; the floors were rotted; the support beams in the roof were rotted; there was a swag in the roof; the gas lines need to be replaced; the wood of the buildings was deteriorating; the plumbing fixtures were inadequate; the relocated structures prohibited access to parts of the property by emergency vehicles; and the doors and windows were not boarded over. She stated that the buildings were hazardous even though unoccupied.
Mr. Bowman, a civil engineer and survey- or, made an inspection of the property at the request of ABC on November or December of 1986, at least 5 months after the Council hearing. His opinion was that the buildings which were originally on the property were sound and of good construction. He said the piers were vertical, and well aligned. He said the beams and joist and foundation of the buildings had been reconstructed to eliminate the rotten portions; the deteriorated parts of the walls had been replaced; and new roofing had been put on. Mr. Bowman felt that the buildings were in good condition, and that meaningful steps towards the renovation of them had been taken. He conceded that the buildings which had been moved onto the property were not in good repair, but said that they could be put in good condition. He further stated that the buildings which had been propped up were well supported, and there was no danger of their shifting. He saw no interference with the necessary paths of any emergency vehicles. Mr. Bowman’s opinion was that the structures were not in a dilapidated and dangerous condition which endangered the public welfare.
During trial the judge, along with the attorneys, visited the site.
After the conclusion of the trial, ABC for the first time raised in its brief the Council’s failure to give ABC proper notice of the Council hearing, citing Housemaster Corp. v. City of Kenner, 374 So.2d 1240 (La.1979). The trial court distinguished Housemaster on the grounds that in the instant case the corporation was actively represented at the council hearing by the corporation’s president and attorney, who appeared in their representative capacities. The trial court then found that the City had met its burden of proving that on the date of the Council hearing, June 17, 1986, the buildings were in a dilapidated and dangerous condition which endangered the public welfare. The trial court found that the testimony of Mr. Epps was rambling and had been impeached on several occasions, and that Mr. Bridges’s testimony had been impeached and contradicted and was “incredible.” The court further found that Mr. Bowman’s testimony was “incredulous” and that his description of the property was not confirmed by the evidence nor the court’s visit to the site. The trial court’s ultimate conclusion after considering all the evidence was that on the date of the Council hearing the buildings in question were in a dilapidated and dangerous condition which endangered the public welfare. The order of demolition or removal of the structures on the property was affirmed.
ABC appealed the trial court’s decision, and is before us now assigning as error:
(1) the City Council’s failure to serve notice on ABC; and
(2) the court’s finding that the buildings were in a dilapidated and dangerous condition which endangered the public welfare.
*675 LSA-R.S. 33:4761 et seq. provide a municipality the power to condemn buildings which are in a dilapidated and dangerous condition which endangers the public welfare. These statutes also provide various procedural protections and substantive restraints before a municipality can condemn a building without compensation. Before condemning the building the municipality must give the owner sufficient notice and a hearing to satisfy governmental responsibility to accord due process of law. R.S. 33:4762. After proper notice and hearing, if the governing body finds that the buildings are in a dangerous and dilapidated condition that endangers the public welfare, it may order condemnation or allow the owner the option to correct the dangerous conditions. R.S. 33:4763. The decision of the governing body may be appealed to the district court for a trial de novo within 5 days of the decision. R.S. 33:4763-4764. When the decision is appealed by the owner to the district court, the burden is on the governing body to sustain its action with sufficient evidence. R.S. 33:4764; Tatum v.' Village of Converse, 440 So.2d 1354 (La. App. 3 Cir.1983).
ASSIGNMENT NO. 1
In its first assignment of error ABC argues that the City failed to comply with the notice procedures set forth in R.S. 33:4762, thereby depriving ABC of procedural due process. This argument was based on the fact that the notice of the Council meeting was sent to "Mr. Archie C. Epes.” Mr. Epps is president of ABC, and most active in its affairs, but the notice was addressed to him in his personal capacity, not as corporate officer. The uncontradicted testimony of Bossier City Mayor Don Jones was that after Epps received the notice ABC requested that the meeting, originally set for May 20, 1986, be continued until June 17, 1986. This request was granted. At the June 17 meeting, the Council minutes reflect that “Archie Epes, Automated Building Corp.,” “Charles Tooke, attorney, representing Automated Building Corp.,” and “Robert Bridges, Bridges & Assoc.” spoke to the Council. The trial judge found that Mr. Epps’s attendance in his capacity as president of ABC and the appearance of ABC’s attorney constituted a waiver of the R.S. 33:4762 notice requirements.
The general rule is that any defect in service of process is waived by a general appearance. LSA-C.C.P. art. 925; Foster v. Wesley, 453 So.2d 680 (La.App. 1st Cir.1984); Moity v. Guilliot, 466 So.2d 511 (La.App. 3rd Cir.1985); Field v. Merritt, 449 So.2d 7 (La.App. 1st Cir.1984), writ denied 450 So.2d 964 (La.1984). Under this rule, the improper service would have been waived by ABC’s general appearance at the council meeting through its president and its attorney, and also by ABC’s request for a continuance of the council hearing.
ABC relies on Housemaster Corp. v. City of Kenner, 374 So.2d 1240 (La.1979) to circumvent this general rule. In that case the City of Kenner, acting under R.S. 33:4762, served notice on L.S. Hiern, ordering him to appear before the City Council meeting on August 28,1978, to show cause why he should not be required to repair or demolish his building. Housemaster was the actual owner of the property. Mr. Heirn was the president of Housemaster, but the notice was served on him in his individual capacity. Mr. Hiern appeared before the Council at the scheduled hearing. From the reported case it does not appear that he was representing Housemaster Corp. The City Council issued an order, dated September 5, 1978, that the building be demolished. The City Council’s decision was not appealed. Thereafter, Housemaster Corp. applied to the city for building permits to make repairs and renovations to the building. The permits were denied on the grounds that the building had been ordered demolished. On December 19, 1978 Housemaster filed a petition for a writ of mandamus in the district court to compel the city to issue the building permits, and for injunctive relief against the City of Kenner to prevent demolition of the building. The city filed an exception of prescription, on the grounds that the plaintiff’s action had prescribed under 33:4763 and 4764, since it was brought after the *676 five-day period to appeal the council’s decision had run. The trial court sustained the exception of prescription and dismissed Housemaster’s action against the city. The court of appeal refused writs, noting that Housemaster's failure to take an appeal under 33:4764 precluded its supervisory jurisdiction. The Supreme Court granted certiorari. The Supreme Court had nothing before it to evidence that the property owner had received a full eviden-tiary hearing on the merits. The Supreme Court concluded that the city of Kenner’s failure to strictly comply with R.S. 33:4762’s requirement that the owner of the building be served with notice invalidated the resolution adopted by the Kenner City Council.
We distinguish Housemaster from the instant situation on the ground that ABC suffered no prejudice and no denial of due process because of the failure to serve proper notice. The essential elements of procedural due process are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. Charles Tolmos, Inc. v. Police Jury of the Parish of Jefferson, 231 La. 1, 90 So.2d 65 (1956); Babi-neaux v. Judiciary Commission, 341 So. 2d 396 (La.1976). To justify relief for procedural due process failure in an administrative proceeding, there must be a showing of substantial prejudice. Joseph v. St. Charles Parish School Board, 736 F.2d 1036 (C.A.La.1984).
It is undisputed that the corporation had actual notice of the Council hearing. The president of ABC, Archie Epps, received the formal notice of the hearing; the corporation then asked for and received a 28-day continuance of the hearing; ABC’s president and attorney attended the meeting, appearing in their capacity as representatives of the corporation, and neither complained of lack of notice; ABC presented evidence at the hearing, ABC exercised its right of appeal under 33:4764; and ABC only complained of lack of sufficient notice in brief after the de novo trial in district court was completed.
The record clearly reflects that the corporation was afforded a hearing by the City Council, as well as a de novo trial at the district court level. The issue of the condition of the buildings was fully litigated. At the trial, pursuant to ABC’s appeal from the Council’s order, the trial court properly ruled that the City bore the burden of proving that the buildings were in a dilapidated and dangerous condition which endangered the public welfare. Tatum v. Village of Converse, supra. The district court trial consumed all or part of 5 days and yielded 577 pages of transcript, as well as voluminous exhibits. Unlike Housemaster Corp., ABC was afforded a full eviden-tiary hearing.
ABC was afforded actual notice, as well as a meaningful hearing at both the city council and district court level. In such a situation, where the corporation has been afforded the basic requirements of procedural due process, notice and a hearing, the corporation cannot be heard to complain after losing on the merits that it was denied procedural due process. Even if we were to conclude the lack of formal notice was a denial of procedural due process, ABC has made no showing that it was prejudiced by that lack of formal notice. Joseph v. St. Charles Schools, supra. The trial court did not err in holding that under the circumstances of this case the lack of formal notice to ABC of the Council hearing did not prohibit a judgment ordering that the buildings be demolished or removed.
ABC also registers several other complaints, which were not assigned as errors, but are mentioned in counsel’s appellate brief.
The first complaint is that the service of the notice of the Council meeting was improper because it was served by a Bossier City Marshall in Shreveport, contrary to the authority provided in LSA-C.C.P. art. 332.[2] This allegation has no foundation in *677 the record. The return of service shows only that personal service was made on Archie Epps, giving date and time but not location. We can find nothing in this record to substantiate counsel’s claim that the service was made in Shreveport.
Although not assigning as formal error, ABC complains in brief that the City failed to provide ABC with procedural safeguards to which it was entitled by state statute and Bossier City ordinances. This complaint is based on the City’s alleged failure to notify ABC of the provisions of § 103.4(c) of Bossier City Ordinance 114. § 103.4(c) of Ordinance 114 concerns the right of a property owner to appeal to a building code board of appeals from a building inspector’s decision to place a notice on a building declaring it unsafe, and prohibiting its use or occupancy. ABC cites no authority for its theory that the City had an obligation to notify the corporation of this appellate procedure. Even assuming this obligation, the City’s failure to do so did not prejudice ABC. The buildings had been declared unsafe, and the notice posted, before ABC acquired ownership of the buildings. The 30 days to appeal had prescribed before ABC had control of the property. ABC would have had no right to appeal the posting of the notice, even had it been notified of that right by the city. This cannot constitute a denial of due process.
ABC apparently contends also that the trial court erred in denying ABC’s motion for new trial based on the belated “discovery” of ordinance 98 of 1979 of the City of Bossier City. C.C.P. art. 1972(2), upon which appellant relies, provides that a new trial is mandatory when the party has discovered, since the trial, important evidence that he could not, with due diligance, have obtained before or during the trial. This section applies only to newly discovered evidence. The “discovery” of existing city ordinances does not fall within the scope of that section of the article.
ASSIGNMENT NO. 2
Appellant’s second assignment of error is that the court erred in its factual determination that the buildings were in a dilapidated and dangerous condition which endangered the public welfare.
The standard, set forth by LSA-R. S. 33:4764, is whether the buildings are in a dilapidated and dangerous condition which endangers the public welfare. When the City Council’s decision is appealed by the owner to the district court, the burden is on that governing body to sustain its action with sufficient evidence. Tatum v. Village of Converse, supra. On review, the appellate court is to give great deference to the factual conclusions reached by the trial court, and should not overturn these conclusions unless they are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
As we have seen in the facts above, the record supports the trial judge’s findings, and we cannot say that they are clearly wrong. It is the trial judge’s perogative to determine the most credible witnesses. The judge did not abuse his discretion in concluding that the City’s witnesses were much more credible than those offered by ABC. This is especially true in light of the trial judge’s visit to the property, and his consequent ability to decide whose factual descriptions were the more accurate. Considered as a whole the evidence adduced at trial supports the trial court’s factual finding.
Finding no merit in appellant’s assignments of error, we affirm the judgment of the court below.
Costs of this appeal are assessed to the appellant.
AFFIRMED.

. The permit was based on modular structures, as opposed to the frame houses that were actually moved onto the premises.

. Even if the merits of this were before us, it would have dubious value. Appellant has cited no cases, nor have we discovered any in our research, that support this argument. Even if this theory were supported, appellant would only succeed in reiterating the main thrust of *677 the first assignment of error. Surely improper service on the wrong party is not more of a denial of due process than mere service on the wrong party. Further, we can find no reason in this instance to retreat from the general rule that any complaints of sufficiency of citation or service of process are waived by an appearance. Field v. Merritt, 449 So.2d 7 (La.App. 1st Cir. 1984), writ denied 450 So.2d 964 (La.1984).