GAIDRY, J.
|2In this action involving the condemnation of a residence, the mortgage holder appeals a district court judgment upholding the City Council’s decision to demolish the house. For the following reasons, we affirm the district court judgment ordering the house to be demolished.
FACTS AND PROCEDURAL HISTORY
The residence at issue in this case, located at 1613 East John Alan in Gonzales, Louisiana, was owned by Warren and Ruth Schulingkamp and mortgaged to Union Planters Bank. In response to complaints by neighbors regarding the condition of the residence, the City of Gonzales’s Chief Building Inspector and the Fire Chief conducted an inspection of the residence.
*274 Fire Chief H. “Butch” Browning’s written report noted the following conditions in the residence: trash piled almost to ceiling height throughout the house; blocked windows throughout the house; the wired smoke detectors have been removed; exposed electrical wiring; electrical cords have been spliced and used for permanent wiring; raw sewerage leaking from the toilet and tub in the master bathroom, pooling in the master closet, and seeping from the outer wall into the yard and neighbor’s lot; multiple holes in the sheet-rock and ceilings throughout the residence; attic ladder is broken and hanging down from ceiling; an electrical space heater has been placed on top of combustible items which, if turned on, presents an immediate fire hazard; the gas hot water heater is missing its protective cover and boxes are piled against it; and the home is infested with mice and a snake. The residence was deemed to be an immediate threat to the safety of the occupants as well as the adjacent homes, a “Cease and Desist” order was immediately issued and all utilities disconnected.
|3Warren C. Zalfen, Jr., a licensed home inspector, conducted an inspection of the residence on October 21, 2004, and noted the following in his report:
This home has not been maintained well on the exterior and has been virtually destroyed on the interior. All of the interior fixtures, finishes and materials will have to be removed and the entire interior of the home rebuilt ... [including] the removal of all insulation .... [A]ll of the exposed structure will require disinfection. This home was so filthy and unsanitary a health hazard actually exists. Rodent activity within the home does exist. Visible mold was observed.
During the course of his October 21 inspection, Mr. Zalfen, who is also a licensed mold inspector and mold remediation contractor, took a swab mold sample from the master bedroom closet. An October 27, 2004 “Mold Testing Report” notes that the residence “was totally littered with personal belongings, trash, debris, feces and many other indescribable articles.” A laboratory analysis of the mold samples revealed the presence of several types of dangerous mold, including Stachybotrys, which has been associated with lung diseases and possibly brain damage, and Penicillium Aspergillus, which attacks lung tissue and causes asthma, edema, bronchiospasms, and in chronic cases, pulmonary emphysema.
A public hearing was held before the City Council on October 25, 2004, which was attended by both Warren Sehuling-kamp and a representative of Union Planters Bank. Union Planters’ representative asked the Council to temporarily delay demolition and promised to take immediate action to remove debris, completely gut the structure, and disinfect the residence. The Council issued an order declaring a grave public emergency as the interior of the building was in such disrepair as to cause possible immediate loss or damage to person or property. The order gave Union Planters until November 4, 2004 to obtain bids and begin completely gutting |4the interior of the structure and stated that if the work was not started on or before November 4, the City would hire a contractor for demolition on November 5, 2004.
Union Planters failed to begin work by the November 4 deadline. At a November 8, 2004 Council meeting, the Council once again declared a grave public emergency and ordered the structure to be demolished on or after November 11, 2004.
Union Planters appealed the City Council’s order to the Twenty-Third Judicial District Court pursuant to La. R.S. *275 33:4764.[1] On November 19, 2004, the district court affirmed the City Council’s condemnation order. Union Planters filed this suspensive appeal. After this appeal was lodged, Union Planters filed an “Ex Parte Motion and Order to Grant Access Pending Suspensive Appeal” in the district court, seeking access to the property to “clean and rehabilitate [the residence] in order to protect and preserve the neighboring properties.” The district court signed the order on December 23, 2004, and Union Planters proceeded with the rehabilitation. On appeal, Union Planters argues that the district court erred in affirming the City Council’s condemnation of the residence when the City of Gonzales failed to comply with La. R.S. 33:4762 before ordering the condemnation and demolition and also erred in failing to apply the laws of equity to the situation.
^DISCUSSION
Louisiana Revised Statutes 33:4762 provides the procedure for condemning and ordering demolition of a structure:
§ 4762. Notice to owner; hearing; notice filed with recorder of mortgages binds transferees
A. Before the governing authority may condemn any building or structure, there must be submitted to it a written report recommending the demolition or removal of the building signed by some city official or other person authorized to act in such matters for the municipality. The mayor or chief executive shall thereupon serve notice on the owner of the building or structure requiring him to show cause at a meeting of the governing authority, regular or special, why the building or structure should not be condemned. The date and hour of the meeting shall be stated in the notice which shall be served at least ten days prior to the date of the hearing, except in case of grave public emergency as hereinafter provided. The notice may be served by registered or certified mail, postage prepaid, addressed to the owner at his last known address. The notice may also be served by the marshal of the municipality or by any sheriff or deputy sheriff or constable having jurisdiction and power to serve legal process where the owner of the building or structure is found in the state of Louisiana, and the officer shall make return of the service as in ordinary cases.
[[Image here]]
C. In case of grave public emergency where the condition of the building is such as to cause possible immediate loss or damage to person or property, the governing authority may condemn the building after twenty-four hours notice served upon the owner or his agent or the occupant and attorney at law appointed to represent the absentee owner.
[[Image here]]
*276 Union Planters alleges on appeal that the court erred in affirming the order condemning the residence because the City lacked a written report recommending condemnation in accordance with La. R.S. 33:4762(A).[2] The October 20, 2004 “Report of Dangerous Conditions” prepared by Fire Chief H. “Butch” Browning stated, in part:
|fiIn my tenure this is the worst living and safety conditions that I have ever seen. The excessive pile of trash and other combustibles pose a serious and immediate threat to the safety and well-being of the occupants as well as to the adjacent homes in this neighborhood. Evidence of electrical hazards, unsafe operational procedures as well as the most terrible house keeping conditions by the occupants indicate that this danger must be remedied at once. I have ordered a “Cease and Desist” and had all utilities disconnected from the structure. Furthermore, until a safety plan is established entry to this dwelling shall only be for removing necessary property for occupants to habitat [sic ] at another location. They shall call me for approval for this entry so safety can be maintained. It is my order that the dangerous condition will still exist until the trash and debris is removed due to the high fire load it is producing as well as the lack of sufficient exits in the building.
While Union Planters is correct that the Fire Chiefs report does not explicitly recommend demolition, their reading of the statute to require such a recommendation is incorrect. The City Council sought to condemn the Schulingkamp’s residence under subsection (C) of this statute, which provides an expedited procedure for cases involving grave public emergency. All that is required by subsection (C) is that there be a grave public emergency and that the owner receive notice of the meeting. The procedural hoops through which the governmental entity must jump are necessarily less in cases where the condition of a building presents a grave public emergency, and in those cases, the owner’s rights are protected by the statute’s notice requirement.
This assignment of error lacks merit.
Union Planter’s second assignment of error is that the trial court erred in “affirming the Condemnation Order and disregarding the laws of equity and the fundamental rights of privacy of [Union Planters] by not affording [Union Planters] more than 10 days to ‘begin completing’ rehabilitation efforts when such efforts are now completed and the residence has been deemed habitable and safe.”
17The condition of the house after the date the judgment was rendered does not change the correctness of the judgment. The City of Gonzales met its burden at trial of proving the necessary elements to have the house condemned and demolished under La. R.S. 33:4762. The issue before the trial court in a suit under this statute is the condition of the structure at the time the Council acted. Tatum v. Village of Converse, 440 So.2d 1354, 1357 (La.App. 3 Cir.1983), writ denied, 444 So.2d 121 (La.1984). Furthermore, any rehabilitation efforts undertaken by Union Planters after the judgment appealed from are not a part of the record before this court on appeal and may not be consid *277 ered. Thus, this assignment of error lacks merit.
DECREE
For the above reasons, the judgment of the trial court upholding the decision of the Gonzales City Council condemning and ordering the demolition of the residence is affirmed. Costs of this appeal are assessed to appellants, Union Planters Bank.
AFFIRMED.
DOWNING, J., concurs.
CARTER, J., concurs with reasons.

. La. R.S. 33:4764, entitled "Appeal from decision,” provides:
The owner, occupant, agent or other representative of the owner may appeal from the decision of the governing authority to the district court having jurisdiction over the property. The appeal shall be made by the filing of a suit against the municipality, setting forth the reasons why the decision or order of the governing body is illegal or improper and the issue shall be tried de novo and by preference in the district court. Where a grave public emergency has been declared by the governing authority, the owner of the building who desires to prevent the demolition or removal thereof must file his petition within forty-eight hours and must, at the time of the filing of the petition, furnish such bond as may be fixed by the district judge to cover any damage that might be caused by the condition of the building.

. The record does not contain a copy of the notice served upon the owner in accordance with La. R.S. 33:4762(C), but appellant does not allege on appeal that the required notice was not given, and the minutes of the Council meetings reflect that both Mr. Schulingkamp and Union Planters were either present or represented at the meetings.