MARC E. JOHNSON, Judge.
12Pefendant, the Parish of Jefferson (“the Parish”), appeals a judgment of the trial court that reversed and vacated a Jefferson Parish Council’s order condemning property owned by Plaintiff, TTC Properties, Inc. (“TTC Properties”), and ordering its demolition. For the reasons that follow, we affirm the trial court’s judgment.

FACTS & PROCEDURAL HISTORY

On August 19, 2013, Jefferson Parish Fire Department Chief Dennis Guidry inspected property located at 2616 Destre-han Ave. in Harvey, owned by TTC Properties, and filed a report that the structure located on the property constituted a fire hazard. Specifically, Chief Guidry noted that the structure (1) contained numerous openings in the walls or other unstopped spaces which increased the risk of conflagration in the area; (2) was vacant with unsecured windows or doors |sthereby permitting entry by unauthorized persons; (3) did not provide proper ingress and egress due to the boarding of windows and/or doors; (4) contained other fire hazards of such a nature to constitute a danger to its occupants and/or others; (5) was in such a state of disrepair that it was conducive to vagrants and crime; (6) was in such a condition so as to cause possible immediate loss or damage to person or property creating a grave public emergency; and (7) was an immediate danger to the health, life or safety of any person. Chief Guidry further noted that “windows have broken panes w/ glass shards exposed, electric panel appears energized from the power pole and has open meter pans ‘an extreme electric shock hazard.’ ” The report recommended that the cited structure be immediately demolished.
Thereafter, on August 21, 2013, the Parish sent a certified letter to TTC Properties demanding it show cause at a hearing on August 28, 2013 why its property at 2616 Destrehan Ave. should not be condemned and demolished pursuant to La. R.S. 33:4671, et seq.[1] Prior to the hearing, *178 TTC Properties hired a civil structural engineer, who inspected the property on August 27, 2013 and found no structural distress in the building at issue. The record before us does not indicate what transpired at the August 28, 2013 hearing before the Jefferson Parish Council (“the Council”); rather, the record only shows that the Council issued an order on the same day, after considering evidence presented including testimony[2] and exhibits, condemning the property and ordering its demolition on August 30, 2013 under the authority of La. R.S. 33:4761, et seq.
On August 29, 2013, TTC Properties filed a petition for judicial review and sus-pensive appeal of the Council’s emergency demolition order with the 24th |4 Judicial District Court pursuant to La. R.S. 33:4764.[3] In its petition, TTC Properties maintained that the Council’s decision to condemn the property and order its demolition was clearly erroneous and not supported by the evidence.
Pursuant to La. R.S. 33:4764, a trial de novo was held on September 26, 2013. At trial, the Parish offered the testimony of Chief Guidry as an expert in fire prevention, fire investigation, and dangerous building inspection. Chief Guidry testified that he inspected the exterior of the building, a four-plex, on August 19, 2013, and prepared a report indicating that the structure presented a fire hazard. He stated that the building was vacant and partially boarded with some deterioration. He explained that the unsecured building lent itself to “thrill seekers, vagrants, [and] children that want to play in the building.”
Chief Guidry also described the building as having broken windows and some missing sheetrock from the interior wall of one of the units that he was able to observe by looking through an unsecured window. On cross-examination, Chief Guidry clarified that he only observed one of the four units, by looking through a window, and saw three holes in the sheetrock. Additionally, he only saw two unsecured windows and one unsecured doorway. He explained that missing sheetrock is a fire hazard because the lack of sheetrock allows fire to spread through the interior walls of the building.
Further, Chief Guidry testified that it appeared the building was still connected to the power grid. He noted the meter pan was exposed, which | presented an electrical shock hazard. However, on cross-examination, Chief Guidry admitted that he did not test the electrical panel to see if it was in fact receiving electricity. In response to questioning by the trial judge, Chief Guidry acknowledged that he could not definitively say whether electricity was or was not being provided to the building at the time of his inspection.
*179 In conclusion, Chief Guidry testified that the building was in a state of disrepair, but did not deem the building dilapidated. He opined the building was in such a state as to cause possible immediate loss or damage to personal property and created a grave public emergency. He further opined the condition of the building was an immediate danger to the health, life or safety of any person unless it was immediately demolished.
Thereafter, TTC Properties offered the testimonies of the owner of the property, Todd Cantrell, and its civil structural engineering expert, Edmond Pepper. Mr. Cantrell testified that he and his wife purchased the property at issue at a sheriffs sale in 2003. He explained they rented out the property but had problems keeping tenants because of the crime in the area. He stated that he and his wife boarded up the property after copper piping was stolen out of the building. Mr. Cantrell explained that dry wall and electrical lines were damaged during the copper theft. He testified that electrical power to the building was turned off after the copper was stolen because of the damage to the electrical lines.
After receiving notice from the Parish about the emergency demolition hearing, Mr. Cantrell hired Mr. Pepper to determine the structural integrity of the building. Mr. Pepper testified that he inspected the property at issue on August 27, 2013, the day before the Council hearing. He observed no exterior signs of structural distress. He noted several broken windows, some of which had been boarded up, and missing doors and door jams, which appeared to have been kicked |Rin. Mr. Pepper opined that the unsecured windows and doors created an “attractive nuisance” and could attract children or vagrants to use the building. Mr. Pepper also stated that there was no service drop from the pole to the meter pan on the day of his inspection and, thus, there was no power to the building.
Mr. Pepper pried open a loose board and squeezed inside the building, where he saw some missing sheetrock. In response to questioning by the trial judge, Mr. Pepper stated that he was able to observe all four of the units by walking through the walls. He explained that there was sheet-rock on the ceiling and on the walls, but portions of the sheetrock in the closets had been pushed or kicked to allow access from one apartment to the other.
On cross-examination, Mr. Pepper agreed that the property was in a state of disrepair, opining that it had been vandalized. He specifically stated that the structure was not dilapidated, which he explained indicates a bad condition caused by age, lack of care, decay, and fallen into partial ruin through neglect or misuse.
In addition to the testimony of these three witnesses, the parties stipulated to three exhibits: (1) the Council’s August 28, 2013 order of condemnation and demolition; (2) Chief Guidry’s August 19, 2013 report; and (3) photographs of the property taken by Chief Guidry.[4]
The trial court took the matter under advisement and rendered judgment *180 the following day on September 27, 2013,[5] reversing the Council’s August 28, 2013 order of condemnation and demolition. In its reasons for judgment, the trial court found that the Parish failed to prove the property was dilapidated and dangerous as | ^required by La. R.S. 33:4761. It noted that Chief Guidry’s testimony was inconclusive on the issue and that his testimony offered little to no support that any grave public emergency existed. The trial court specifically noted that although Chief Gui-dry saw an allegedly charged electrical wire leading to a damaged electrical pan, he never tested the wire to see if it was energized. The trial court further noted Mr. Pepper’s contrary testimony that there was no electrical power to the building'at the time of his inspection. It also observed that both parties agreed that the building was structurally sound.
The trial court concluded that the pictures of the premises and the testimony presented failed to show that the condition of the property rose to a level of disrepair, dereliction, dilapidation, or dangerousness, or that it posed an immediate threat of loss or damage to person or property to warrant demolition. The trial court found that the evidence failed to show extensive or significant damage to either the interior or exterior of the property, and commented that it considered the damages to be minor.

ISSUES

On appeal, the Parish contends the trial court erred in finding insufficient evidence to prove the property was dilapidated and dangerous so as to warrant condemnation and demolition under La. R.S. 33:4761, et seq. The Parish also argues the trial court erred in considering the Jefferson Parish Code of Ordinances in determining the proper standard for condemnation instead of relying exclusively on the statutory standards set forth in La. R.S. 33:4761, et seq.
LAW & ANALYSIS
Under La. R.S. 33:4761,
[t]he governing authority of any parish or municipality may condemn and cause to be demolished or removed any building or structure |8within the parish or municipality when it is in a dilapidated and dangerous condition which endangers the public welfare.
“In case of grave public emergency where the condition of the building is such as to cause possible immediate loss or damage to person or property,” the parish may condemn the building after 24-hours of serving notice upon the owner. La. R.S. 33:4762(C).
Before a building can be condemned, a written report recommending the demolition or removal of the building must be signed by a parish official or other person authorized to act on behalf of the parish in such matters. Thereafter, notice must be served upon the owner of the building requiring him to show cause at a meeting of the governing authority why the building should not be condemned.' La. R.S. 33:4762(A)(1). After the hearing, if justified by the facts, the parish or governing authority shall enter an order condemning the building and ordering its demolition. However, “[i]f repairs will correct the dilapidated, dangerous, or unsafe condition, the parish or municipal governing authority may grant the owner the option of *181 making such repairs.” La. R.S. 33:4763(A).
When the owner contests the decision of the Council, the burden is on the governing authority to sustain its action with sufficient evidence at a trial de novo. Automated Bldg. Corp. v. City of Bossier City, 530 So.2d 671, 677 (La.App. 2nd Cir. 1988), writ denied, 533 So.2d 358 (La.1988); Tatum v. Village of Converse, 440 So.2d 1354, 1357 (La.App. 3rd Cir.1983), writ denied, 444 So.2d 121 (La.1984). The issue before the trial court in a trial de novo is the condition of the structure at the time the Council acted. Union Planters Bank, N.A. v. City of Gonzales, 05-377 (La.App. 1 Cir. 2/10/06); 924 So.2d 272, 276, writ denied, 06-992 (La.6/16/06); 929 So.2d 1292, citing Tatum, supra. The trial court’s factual findings in this regard are given great deference and should not be overturned 19unless they are clearly wrong. Automated Bldg. Corp., supra. In order to reverse the trial court’s factual determination regarding the sufficiency of the evidence in a condemnation and demolition case, the appellate court must review the record in its entirety and find the trial court was manifestly erroneous in its findings. Jumonville v. City of Kenner, 13-793 (La.App. 5 Cir. 3/26/14), 134 So.3d 1279,1287.
Upon review, we cannot say the trial court was manifestly erroneous or clearly wrong in its finding that the Parish failed to prove the structure at issue was in a dilapidated and dangerous condition which “endangered the public welfare” and presented “a grave public emergency” as to cause possible immediate loss or damage to person or property so as to warrant an emergency order of condemnation and demolition.
Chief Guidry only inspected the exterior of the building on one occasion nine days prior to the Council hearing. He noted several broken windows, two of which were unsecured; one unsecured door; and three holes in the interior sheetrock of one of the four units which he observed through a window. At the time of his report in which he recommended demolition, he believed the building was connected to the power grid and receiving electricity and determined the structure presented a fire hazard. However, he admitted at trial that he never tested for electrical flow and could not say whether the building had or did not have electricity. TTC Properties’ expert, Mr. Pepper, who inspected the building the day before the Council hearing, testified that the building was not connected to a power source because there was no service drop from the pole to the meter pan. Both Chief Guidry and Mr. Pepper agreed the building was in a state of disrepair, but was not structurally unsound. Additionally, neither Chief Guidry nor Mr. Pepper could testify that the building was dilapidated, within his understanding of |Tnthe meaning of the word. Mr. Pepper described the building as an “attractive nuisance.”
The Merriam-Webster Dictionary defines dilapidated as “decayed, deteriorated, or fallen into partial ruin especially through neglect or misuse.” Ruin is defined as “the remaining pieces of something that was destroyed.” Conversely, nuisance is defined as “a thing or situation that is annoying or that causes trouble or problems.” Based on the evidence presented, we cannot say the trial court erred in finding that neither the testimony nor photographs of the building showed a dilapidated and dangerous structure that endangered the public welfare for purposes of La. R.S. 33:4761, et seq.[6] Additionally, *182 we cannot say the trial court erred in finding the Parish presented little or no evidence to establish the building presented a “grave public emergency” so as to warrant its emergency demolition.
While we recognize and appreciate the Parish’s duty to protect the public from dilapidated and dangerous structures that endanger the public welfare, we cannot say the trial court abused its discretion in this case in finding that the Parish had not met the difficult burden of proving that a “grave public emergency” existed as required by the statute under which the Parish chose to proceed.[7]
Furthermore, we find no merit in the Parish’s argument that the trial court erroneously used the Jefferson Parish Code of Ordinances as the applicable standard for determining the propriety of the Council’s condemnation and order of demolition. The trial court referenced the Code of Ordinances in its reasons for judgment only in the context of the procedural history involving the property. Specifically, as noted by the trial court, the property had been cited for certain code Inviolations that were the subject of unrelated proceedings. It is clear from the trial court’s reasons for judgment that it properly relied on La. R.S. 33:4761, et seq., to guide its decision in reviewing the Council’s August 28, 2013 order.

DECREE

For the foregoing reasons, we affirm the September 27, 2013 judgment of the trial court that reversed the Council’s August 28, 2013 emergency order of condemnation and demolition. Further, we remand the matter for the limited purpose of ordering the trial court to correct the date of its judgment to properly reflect that it was rendered on September 27, 2013, as opposed to September 27, 2012.

AFFIRMED; REMANDED FOR CORRECTION OF DATE OF JUDGMENT.

. Todd Cantrell, owner of TTC Properties, testified at trial that the August 21, 2013 letter was posted on the building at issue and discovered by him on August 24, 2013 when he went to the property.

. It is unclear what testimony the Council heard as Chief Guidry testified at trial that, even though he was present, he did not testify at the hearing before the Council.

. La. R.S. 33:4764(A) provides:
The owner, occupant, agent or other representative of the owner may appeal from the decision of the parish or municipal governing authority to the district court having jurisdiction over the property. The appeal shall be made by the filing of a suit against the parish or municipality, setting forth the reasons why the decision or order of the governing body is illegal or improper, and the issue shall be tried de novo and by preference in the district court. Where a grave public emergency has been declared by the parish or municipal governing authority, the owner of the building who desires to prevent the demolition or removal thereof must file his petition within forty-eight hours and must, at the time of the filing of the petition, furnish such bond as may be fixed by the district judge to cover any damage that might be caused by the condition of the building.

. Forty-four photographs were introduced into evidence in globo. During trial, it was noted that some of the photos had been taken after the August 28, 2013 Council hearing. The record shows the parties agreed that only three photographs were taken by Chief Gui-dry before the Council hearing or on August 19, 2013; however, the three photographs were never specifically identified or so marked. Thus, from the record before us, we are unable to determine which three of the 44 photographs were taken prior to the Council hearing.

. The judgment erroneously shows that it was rendered and signed on September 27, 2012. It is stamp-filed with the correct date of September 27, 2013. The error in the year is a clerical error that has no effect on the substantive judgment. See Lewis v. First State Bank & Trust Co., 413 So.2d 671, 672 (La.App. 1st Cir.1982).

. Compare Tatum v. Village of Converse, 440 So.2d 1354 (La.App. 3rd Cir.1983), writ de *182 nied, 444 So.2d 121 (La.1984), "[ajlthough the record indicates that the building was run down and basically an eyesore, the only evidence of dilapidation which presented a danger to the public welfare pertained to the south wall ... [where] [t]he sills, studs and floor joists were rotted and the wall had no support."

. The burden of proof required when proceeding under La. R.S. 33:4761, et seq., is significantly more difficult than that of La. R.S. 33:1373 or R.S. 13:2575, et seq.