STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 CA 0351

PATRICK TESSIER

VERSUS

CITY OF DENHAM SPRINGS

*Judgment Rendered:* DEC 0 3 2024

********

21st Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Case No. 176949

The Honorable Charlotte H. Foster, Judge Presiding

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

Robert W. Morgan                          Counsel for Plaintiff/Appellant
Denham Springs, Louisiana                 Patrick Tessier

Stephanie Bond Hulett                     Counsel for Defendant/Appellee
Denham Springs, Louisiana                 City of Denham Springs

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

BEFORE: McCLENDON, WELCH, AND LANIER, JJ.

McClendon, J. Concurs in the Result Reached by the majority.

**LANIER, J.**

The plaintiff, Patrick Tessier, has appealed the judgment of the Twenty-First Judicial District Court, which affirmed the order of condemnation by the defendant, the City of Denham Springs (the City), and the subsequent denial by the district court of his motion for new trial. For the following reasons, we affirm the judgment of the district court.

## FACTS AND PROCEDURAL HISTORY

Mr. Tessier is the owner of property located at 918 and 922 Florida Street, Denham Springs, Louisiana. Located at these addresses are buildings that Mr. Tessier has admitted are in a state of disrepair. The City first issued notice to Mr. Tessier on August 14, 2003, that the buildings were considered for demolition due to being in a "dangerous and/or unsafe condition." Due to the flooding of the Denham Springs area in 2016, many records of decisions made by the City regarding the buildings were lost, and it is unclear what actions the City took after the initial notice; nevertheless, the buildings remained standing. There is a record of the buildings being once again considered for demolition in 2011, after the City completed an inspection and cited problems such as improper plumbing, lack of ventilation, lack of exterior windows, no heating units, inoperable lighting, holes in the walls and roof, severe damage to the floors, and no utility services. Despite these issues, the property was occupied by a tenant.

Another inspection of the property was done in April of 2014, when a different tenant was residing at the 918 address. The City found that the building had no operating kitchen, bathrooms, heater, water heater, water or garbage service. The building also had missing windows, a malfunctioning door, malfunctioning electrical outlets, and damage to the roof and ceiling. Based on these findings, the City deemed the building unfit for human habitation, and issued

another notice to Mr. Tessier on June 11, 2014 that the buildings were being considered for condemnation and demolition.

Although some of the City's records are missing due to the flood, it appears that Mr. Tessier agreed, after the above inspection, to repair the roofs and floors, keep the buildings locked and secured, and clean the buildings. After these remediations were made, Mr. Tessier used the buildings for storage only, and the buildings were never restored to a habitable condition. Following another inspection by the City in August of 2021, it was observed that the roofs were collapsing and the buildings were in advanced states of deterioration. The City's building inspector, Rick Foster, determined that both buildings posed hazards to the neighboring dwellings and community in general and needed to be demolished.

The City sent a letter to Mr. Tessier on January 26, 2022, requesting that he appear before the Board of Housing Appeals (the Board) on February 14, 2022, and on March 8, 2022. On both dates, the City held hearings where Mr. Tessier was advised to make either repairs to the buildings or demolish them. However, Mr. Tessier responded that the buildings were not in need of repairs since he only used them for storage. Despite Mr. Tessier's reluctance to repair the buildings, the City gave him several extensions on the deadline to complete repairs.

On September 29, 2022, Mr. Foster reported to the City that Mr. Tessier had not applied for any building permits and had not made any repairs, that the buildings had further, deteriorated, and that the coverings put over the open windows had fallen, rendering the buildings unsecured. Mr. Foster recommended to the City that the building be demolished immediately. Mr. Tessier was given another extension until December of 2022 to make repairs.

On December 12, 2022, Mr. Foster admitted that no progress had been made in repairing the buildings, and that they had deteriorated further. He noted that at the 918 address, the existing porch roof had completely collapsed, a temporary

cover to the porch had been added, and metal sheeting had been placed over the roof. At the 922 address, the window coverings had been propped up, but the structure was still unsecured. Mr. Foster's opinion remained that the buildings should be demolished.

Mr. Tessier appeared before the City's Board of Housing Appeals (the Board) on December 12, 2022, where Mr. Foster gave his report and opinion that the improvements made by Mr. Tessier to the properties were made without permits and were not code-compliant. Mr. Foster also stated he had observed a collapsed wall, vegetation growing in one of the roofs, and a fallen tree on top of one of the buildings. An aluminum garage door was being used to cover an exposed section of the exterior, and the collapsing roof was pushing walls outward. A member of the Board, who was also a firefighter, stated that the buildings' condition created an unsafe environment for first responders who may be called there for a fire or criminal activity.

Mr. Tessier explained that he thought no further repairs were necessary, and that he did not intend to spend any more money to repair his property. At that time, the Board voted to send the matter to the City Council with the recommendation to condemn both buildings. Mr. Tessier hired an engineering firm to inspect his buildings. In a letter dated December 22, 2022, engineer Brady Hotard of Brantin Engineering stated he completed a non-destructive inspection of the buildings on December 21, 2022, he noted significant damage to the roof system, but that the cinder block walls and concrete foundation were in good structural standing, and any signs of distress were aesthetic in nature. He concluded the buildings were safe for the purpose of storage, and were not a threat to public safety.

The matter came before the City Council on December 27, 2022. Mr. Tessier introduced Mr. Hotard's letter to the Council. Mr. Tessier stated that his

repairs to the buildings were sufficient. He further stated that if he had to do any further repairs, he would use materials he had stored at the property, and he would no do any further repairs if the costs exceeded $40,000. The City Council granted Mr. Tessier an extension of time to obtain an estimate of the repair costs. Mr. Tessier then got an estimate from a construction company for repair expenses. The estimate, dated January 20, 2023, stated that to remedy the cited damage to the building and make the buildings safe and secure for storage purposes would cost approximately $80,000.

The City Council reconvened on the matter on January 23, 2023. Mr. Tessier presented the cost estimate to the City Council at that time. Mr. Foster, who was present, stated that the estimate did not address certain issues he thought were of concern. Mr. Tessier then stated that he did not intend to spend $80,000 to repair his property; rather, he would only use materials he had stored there and not spend any further money to repair his building. The City Council then voted to condemn the buildings.

Mr. Tessier filed with the district court an appeal of the order of condemnation by the City Council and a petition for preliminary injunction on January 30, 2023. In the appeal, Mr. Tessier argued that under Article IX, Section 22-331, *et seq.* of the Denham Springs Code of Ordinances and pursuant to La. R.S. 9:4761, buildings can be condemned and demolished only if they present a danger to the public welfare, and he had presented sufficient evidence that the buildings on his property did not endanger the public welfare. At the hearing on the appeal, Mr. Tessier additionally argued that the condemnation of his property constituted an illegal taking as defined by Article I, Section 4 of the Louisiana Constitution.

The district court signed a judgment on May 10, 2023, in which it decreed that the order of condemnation did not constitute an illegal expropriation or taking

by the City, that Mr. Tessier's appeal of order of condemnation be denied, that Mr. Tessier's petition for preliminary injunction be denied, and that the City could proceed with the demolition on Mr. Tessier's property. On May 30, 2023, Mr. Tessier filed a motion for new trial. On October 4, 2023, the district court denied the motion for new trial. Mr. Tessier then filed the instant suspensive appeal on November 9, 2023.

## DISCUSSION

Mr. Tessier avers in the instant appeal that the district court erred in ruling that the actions of the City in the condemnation proceedings did not involve a taking under Louisiana law, and that the district court erred in denying his motion for new trial.

A denial of a motion for new trial is an interlocutory judgment, and is not generally appealable; however, it is subject to review by an appellate court when an appealable judgment is rendered in the same case. See *Moran v. G & G Const.*, 2003-2447 (La. App. 1 Cir.10/29/04), 897 So.2d 75, 83 n.4, writ denied, 2004–2901 (La.2/25/05), 894 So.2d 1148. Therefore, we consider Mr. Tessier's appeal of the denial of the motion for new trial as an appeal of the underlying judgment because it is clear from his brief that he intended to appeal the underlying judgment.[1] See *Miller v. Albertson's Companies, LLC,* 2023-0527 (La. App. 1 Cir. 12/27/23), 381 So. 3d 84, 88, citing *Carpenter v. Hannan,* 2001-0467 (La. App. 1 Cir. 3/28/02), 818 So.2d 226, 228-229, writ denied, 2002-1707 (La. 10/25/02), 827 So.2d 1153.

---

[1] We note that Mr. Tessier's brief provides no argument as to why the motion for new trial should have been granted. Uniform Rules—Courts of Appeal, Rule 2-12.4(B)(4) requires that "[a]ll assignments of error and issues for review must be briefed. The court may consider as abandoned any assignment of error or issue for review which has not been briefed." However, based on our discussion above, we shall nevertheless review the denial of the motion for new trial.

The Louisiana Constitution addresses property rights, and in particular the seizure of private property by the government (known as eminent domain or a "taking"), in Article I, Section 4.[2] That section states, in pertinent part:

> (B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.
>
> * * *
>
> (2) As used in Subparagraph (1) of this Paragraph and in Article VI, Section 23 of this Constitution, "public purpose" shall be limited to the following:
>
> * * *
>
> (c) The removal of a threat to public health or safety caused by the existing use or disuse of the property.
>
> * * *
>
> (4) Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question.
>
> (5) In every expropriation or action to take property pursuant to the provisions of this Section, a party has the right to trial by jury to determine whether the compensation is just, and the owner shall be compensated to the full extent of his loss. Except as otherwise provided in this Constitution, the full extent of loss shall include, but not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any other damages actually incurred by the owner because of the expropriation.

This constitutional provision is further expanded by La. R.S. 33:4761, which states, "The governing authority of any parish or municipality may condemn and cause to be demolished or removed any building or structure within the parish or municipality when it is in a dilapidated and dangerous condition which endangers the public welfare." The Denham Springs Code of Ordinances, Section 22-331, *et*

---

[2] This section of the Louisiana Constitution is an expansion of the "takings clause" found in the Fifth Amendment of the United States Constitution, which provides that "private property [shall not] be taken for public use, without just compensation. See *Avenal v. State*, 2003-3521 (La. 10/19/04), 886 So.2d 1085, cert. denied, 544 U.S. 1049, 125 S.Ct. 2305 (2005).

*seq.*, was similarly modeled from La. R.S. 33:4761, stating, "The mayor and city council may condemn and cause to be demolished or removed any building or structure within the city or municipality when it is in a dilapidated and dangerous condition which endangers the public welfare."[3] It is under these aforementioned authorities that the City argues it has the authority to condemn and demolish the buildings on Mr. Tessier's property.

On judicial review of a decision by an administrative agency, an aggrieved party may seek review of the district court's judgment by appeal to the appropriate appellate court. On review of the district court's judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court. *New Cingular Wireless, PCS, LLC v. City-Parish of East Baton Rouge*, 2021-0292 (La. App. 1 Cir. 12/30/21), 340 So.3d 1037, 1042. Thus, an appellate court sitting in review of an administrative agency reviews the findings and decision of the administrative agency and not the decision of the district court. *Id.* at 1043.

Although the *New Cingular Wireless* case deals with a zoning ordinance and not a condemnation ordinance, we recognize that zoning and condemnation are both policing powers of municipal governments, and analogously would follow the same standards of review relating to judicial review of decisions by municipal

---

[3] Section 22-332(a) states, in pertinent part:

> Before the city may condemn any building or structure there must be submitted to it a written report recommending the demolition or removal of the building signed by some city official or other person authorized to act in such matters for the municipality. The mayor shall thereupon serve notice on the owner of the building or structure requiring him to show cause at a meeting of the mayor and city council ... why the building or structure should not be condemned.

Further, Section 22-333(a) states:

> After the hearing, if, in the opinion of the mayor and city council, the facts justify it, an order shall be entered condemning the building and ordering that it be demolished or removed within a certain delay. If repairs will correct the dilapidated, dangerous, or unsafe condition, the mayor and city council may grant the owner the option of making such repairs, but in such a case the general nature or extent of the repairs to be made, the time thereof, and the defects to be corrected shall be specified in the decision of the mayor and city council.

agencies. See *City of New Orleans v. Board of Com'rs of Orleans Levee Dist.*, 93-0690 (La. 7/5/94), 640 So.2d 237, 254-55.

The exclusive grounds upon which an administrative agency's decision may be reversed or modified on appeal are enumerated in La. R.S. 49:978.1(G), which provides:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

When the legality or propriety of the decision or order of the governing body is contested by the owner as provided by statute, the burden is on that body to sustain its action with sufficient evidence. *Tatum v. Village of Converse*, 440 So.2d 1354, 1357 (La. App. 3 Cir. 1983), writ denied, 444 So.2d 121 (La. 1984). A reviewing court cannot substitute its own judgment; it cannot interfere absent a showing that the City was arbitrary and capricious or abused its discretion in issuing the condemnation order. See *Papa v. City of Shreveport*, 27,045 (La. App. 2 Cir. 9/29/95), 661 So.2d 1100, 1103, writ denied, 95-2544 (La. 1/5/96).

Generally, a municipality in the exercise of its police power may, without compensation, destroy a building or structure that is a menace to the public safety or health. At a minimum, however, that municipality must, before destroying a building, give the owner sufficient notice and a hearing to satisfy the governmental responsibility to accord due process of law. *Housemaster Corp. v. City of Kenner*, 374 So.2d 1240, 1242 (La. 1979). Statutes and ordinances regarding condemnation must be strictly construed, particularly the requirement that the proper owner be notified of the hearing. See *Id.*, 1242-43.

Under federal law, when the government limits the use a property owner may make of his or her property, without itself occupying or otherwise using the property for government purposes, the classic analytical tool for assessing whether a taking has occurred is the three-part test enunciated by the Supreme Court in *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123-24, 98 S.Ct. 2646, 2659 (1978): the court considers the character of the governmental action, the economic impact on the claimant and, particularly, the extent to which the governmental action has interfered with distinct investment-backed expectations. 438 U.S. at 124, 98 S.Ct. at 2659.

It is clear from the record that the City intends to only demolish the buildings on Mr. Tessier's property for the purpose of alleviating a potential hazard to public welfare, and does not intend on taking the property itself for any public use. In satisfaction of municipal and state law, there are notices dating back to 2003 issued by the City to Mr. Tessier, inspection reports by Mr. Foster, and City Council meeting minutes that clearly indicate this. Mr. Foster had also taken photographs of the buildings on each of his inspections. We have reviewed these photographs, and they accurately depict the growing severity of disrepair and hazardous nature that Mr. Foster described in each of his reports. We find from

10

our review that there was a reasonable basis to find that the buildings would pose a danger to anyone who goes inside or near them.

With respect to the economic impact the demolition of Mr. Tessier's buildings would have on him, we find there is little to none. By his own statements at the City Council meetings, it would be cost-prohibitive to repair the buildings to where they would be code-compliant. His intention to repair his buildings with materials he already has stored there and to not spend any money on the repairs align with Mr. Foster's assessment that the expense of the necessary repairs would exceed the cost of demolition and a new construction. The photographs taken by Mr. Foster show that the buildings are so dilapidated that they are of little to no value.

Mr. Tessier has not voiced any investment-backed expectations that he may have in the buildings. Rather, he has voiced that he does not wish to invest any money into the repairs that are needed. The buildings are not safe for habitation, and it appears from the record that no one has lived on the property since 2014. Since he cannot use the property for rental purposes, the only purpose he claimed to have for the buildings is the storage of materials used to make repairs to it. This circular justification Mr. Tessier has for maintaining the buildings indicates that there is no present or future investment-backed expectation that the buildings will be of any pecuniary benefit whatsoever.

Based on our analysis under *Penn*, we find that the actions of the City to condemn Mr. Tessier's property do not amount to an expropriation or taking under the U.S. or Louisiana Constitution, and that it was proper for the district court to uphold the City's decision to condemn the property and allow the City to proceed with demolition. Whatever pecuniary interest Mr. Tessier may have in the buildings on his property is greatly outweighed by the City's duty to protect the public from the buildings' hazardous conditions. Furthermore, the City is not

11

attempting to seize Mr. Tessier's property from him, but merely attempting to eliminate its danger to the public welfare.

Additionally, we find that the City followed proper procedure in issuing inspection reports and giving Mr. Tessier notice of its intention to condemn and demolish the buildings on his property. Based on our own review of the record, we do not find that the City was arbitrary and capricious, or abusive in its discretion to order the condemnation of the buildings, and may proceed with the demolition.

## DECREE

The judgment of the Twenty-First Judicial District Court to affirm the order of condemnation by the City of Denham Springs is affirmed. The district court's denial of the motion for new trial is also affirmed. All costs for the instant appeal are assessed to the appellant, Patrick Tessier.

**JUDGMENT AND DENIAL OF MOTION FOR NEW TRIAL AFFIRMED.**